O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN CARTER, JUSTIN CLOUSE, DEBORAH LANASA, AND MICHAEL STYLES, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>               Plaintiff,<br><br>   v.<br><br>ANDERSON MERCHANDISERS, LP, and DOES 1-10, inclusive,<br><br>               Defendants. | Case No. EDCV 08-25-VAP (OPx)<br><br>**[Motion filed on June 2, 2008]**<br><br>**ORDER GRANTING MOTION FOR CONDITIONAL CERTIFICATION** |

Plaintiffs' Motion for Conditional Certification came before the Court for hearing on July 7, 2008.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS Plaintiffs' Motion for Conditional Certification.

///

## I. BACKGROUND

**A.   Procedural History**

On January 10, 2008, Plaintiffs Justine Clouse, Deborah Lanasa, Michael Styles, and Kevin Carter filed a Complaint ("Compl.") on behalf of themselves and others similarly situated, naming as Defendant Anderson Merchandisers, LP.  The Complaint alleges violations of California, Oregon, and federal law for failure to pay overtime wages and provide appropriate meal and rest breaks to employees.  Plaintiff seeks to assert claims on behalf of a nationwide collective class pursuant to the Fair Labor Standards Act ("FLSA"), and California and Oregon classes pursuant to Federal Rule of Civil Procedure 23.  Defendant filed an Answer on February 13, 2008.

Plaintiffs filed this Motion to Certify Class Conditionally ("Mot.") on June 2, 2008, along with supporting declarations and exhibits.  Defendant filed an Opposition ("Opp'n") and supporting declarations and exhibits on June 16, 2008. On June 23, 2008, Plaintiffs filed a Reply with supporting declarations and exhibits.

**B.   Plaintiff's Collective Class Allegations**

Plaintiffs and putative collective class members ("collectively Class Members") are or have been employed by Defendant as sales representatives.  (Compl. ¶¶ 2-4.)

2

1   Defendant failed to pay Class Members appropriate

2   compensation, including overtime compensation. (Compl. ¶

3   5.)  Defendant misclassified Class Members as "exempt"

4   from federal and state overtime laws, and misrepresented

5   to Class Members that they were not entitled to overtime

6   pay if they worked over forty hours in a week. (<u>Id.</u> ¶

7   20.)  During their employment by Defendant, Class Members

8   worked in excess of forty hours per work week, and yet

9   Defendant failed to pay them appropriate overtime

10  compensation. (<u>Id.</u> ¶ 36.)  Additionally, Defendant

11  failed to record, report, and preserve accurate records

12  of the hours Class Members worked. (<u>Id.</u> ¶ 37.)

13

14                    **II. LEGAL STANDARD**

15      Under the FLSA, an employer is liable to its

16  employees for any unpaid overtime compensation. <u>See</u> 29

17  U.S.C. §§ 207(a), 216(b).  An employee may maintain an

18  action on behalf of himself "and other employees

19  similarly situated."  29 U.S.C. § 216(b); <u>see also</u> <u>Does I</u>

20  <u>though XXIII v. Advanced Textile Corp.</u>, 214 F.3d 1058,

21  1064 (9th Cir. 2000).  A "putative plaintiff must

22  affirmatively opt in to a § 216(b) action" by filing with

23  the district court a written consent to sue. <u>Hipp v.</u>

24  <u>Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1216 (11th

25  Cir. 2001); <u>see also</u> <u>Advanced Textile</u>, 214 F.3d at 1064;

26  29 U.S.C. § 216(b).[1]

27  _____
              [1]By contrast, "[i]n a Rule 23 class action, each
28                                          (continued...)

                            3

1   "To maintain an opt-in class under § 216(b),

2   plaintiffs must demonstrate that they are 'similarly

3   situated.'"  Hipp, 252 F.3d at 1217; 29 U.S.C. § 216(b).

4   Though "similarly situated" is not defined in § 216(b)

5   and the Ninth Circuit has not prescribed a test for

6   determining when the standard has been met, at least two

7   courts in this district have used the two-tiered approach

8   adopted by the Fifth, Tenth, and Eleventh Circuits.  See

9   Pfohl v. Farmers Ins. Group, No. CV03-3080 DT (RCx), 2004

10  WL 554834, *2-3 (C.D. Cal. Mar. 1, 2004); Wynn v. Nat'l

11  Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1081-82

12  (C.D. Cal. 2002) (both citing Mooney v. Aramco Services

13  Co., 54 F.3d 1207, 1212 (5th Cir. 1995); Thiessen v.

14  General Electric Capital Corp., 267 F.3d 1095, 1102 (10th

15  Cir. 2001); and Hipp v. Liberty Nat'l Life Ins. Co., 252

16  F.3d 1208, 1216 (11th Cir. 2001)).  Other Ninth Circuit

17  district courts recently have followed this approach. See

18  Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 536 (N.D.

19  Cal. 2007).

20

21  _____

22  (...continued)
    person who falls within the class definition is

23  considered to be a class member and is bound by the

24  judgment, favorable or unfavorable, unless he has opted

25  out."  Hipp, 252 F.3d at 1216.  Thus, while an FLSA

26  representative action follows an "opt-in" procedure, a

    Rule 23 class action follows an "opt-out" procedure.  See

27  Mooney v. Aramco Services Co., 54 F.3d 1207, 1212 (5th

28  Cir. 1995).

4

1      Under the two-tiered approach, a court first
2  determines, "on an ad hoc case-by-case basis, whether
3  plaintiffs are 'similarly situated.'"  Thiessen, 267 F.3d
4  at 1102 (citing Mooney, 54 F.3d at 1213).  This is
5  typically referred to as the "notice stage" because the
6  court "makes a decision — usually based only on the
7  pleadings and any affidavits which have been submitted —
8  whether notice of the action should be given to potential
9  class members."  Mooney, 54 F.3d at 1213-14.

10

11     Because the court only has minimal evidence at this
12  stage, the determination of whether opt-in plaintiffs
13  will be similarly situated "is made using a fairly
14  lenient standard, and typically results in 'conditional
15  certification' of a representative class."  Mooney, 54
16  F.3d at 1214.  Courts require "nothing more than
17  substantial allegations that the putative class members
18  were together the victims of a single decision, policy,
19  or plan."  Thiessen, 267 F.3d at 1102-3 (internal
20  quotations omitted).

21

22     Though at this stage the plaintiff's evidence may
23  show no more than a pattern of illegal conduct, this does
24  not prevent conditional certification, which is properly
25  understood as a case management tool and a means by which
26  courts can oversee and guide discovery.  See Hoffmann-
27  LaRoche Inc. v. Sperling, 493 U.S. 165, 169, 172

28

(1989)("Section 216(b)'s affirmative permission for
employees to proceed on behalf of those similarly
situated must grant the court the requisite procedural
authority to manage the process of joining multiple
parties in a manner that is orderly [and] sensible. . .
.").[2]

Furthermore, the mandatory language and the purpose
of the FLSA would be frustrated by a higher evidentiary
hurdle precluding employees who have suffered the same
illegal treatment by an employer from prosecuting one
action more efficiently and economically than would be
possible with numerous individual claims. 29 U.S.C. §
202 (describing purpose of FLSA "to correct and . . . to
eliminate . . . labor conditions detrimental to the
maintenance of the minimum standard of living necessary
for health, efficiency, and general well-being of
workers"); see also Alamo Found. v. Sec'y of Labor, 471
U.S. 290, 296-97 (1985) ("broad coverage is essential to
accomplish the goal of outlawing from interstate commerce

---

[2] The Supreme Court considered a claim under the Age
Discrimination in Employment Act in Hoffman-LaRoche.  493
U.S. at 167.  Because the ADEA incorporates § 216(b) of
the FLSA's enforcement provisions, the Hoffman-LaRoche
decision is relevant here.  Id. (indicating that
"[s]ection 7(b) of the ADEA incorporates enforcement
provisions of the [FLSA] and provides that the ADEA shall
be enforced using certain of the powers, remedies and
procedures of the FLSA").

1  goods produced under conditions that fall below minimum

2  standards of decency") (citing <u>Mitchell v. Lubin,</u>

3  <u>McGaughy & Assoc.</u>, 358 U.S. 207, 211 (1959); <u>Powell v.</u>

4  <u>United States Cartridge Co.</u>, 339 U.S. 497, 516 (1950)).

5

6      After the court "conditionally certifies" a

7  representative class, it may authorize the named

8  plaintiffs to send notice to all potential plaintiffs and

9  set a deadline by which opt-in plaintiffs must file

10 consents to join the suit.  <u>See</u> <u>Advanced Textile</u>, 214

11 F.3d at 1064 (citing <u>Hoffmann-LaRoche</u>, 493 U.S. at 169,

12 172).  The case then proceeds as a representative action

13 throughout discovery.  <u>Mooney</u>, 54 F.3d at 1214.

14

15     The second stage of the two-tiered approach usually

16 is precipitated by a motion for decertification by the

17 defendant and occurs "after discovery is largely complete

18 and the matter is ready for trial." <u>Mooney</u>, 54 F.3d at

19 1214.  At this stage, the court has much more evidence on

20 which to base its decision, and makes a factual

21 determination on whether the opt-in plaintiffs are

22 similarly situated.  <u>Id.</u>  The court may weigh several

23 factors, including: "(1) the disparate factual and

24 employment settings of the individual plaintiffs, (2) the

25 various defenses available to the defendant which

26 appear[] to be individual to each plaintiff, and (3)

27 ///

28

1  fairness and procedural considerations." <u>Pfohl</u>, 2004 WL
2  554834 at *2 (citing <u>Thiessen</u>, 267 F.3d at 1103).

3

4      If the court finds the claimants are similarly
5  situated, the representative action will proceed to
6  trial.  <u>Mooney</u>, 54 F.3d at 1214; <u>Hipp</u>, 252 F.3d at 1218
7  (quoting <u>Mooney</u>).  If, on the other hand, the claimants
8  are not similarly situated, the court decertifies the
9  class, and the opt-in plaintiffs are dismissed without
10  prejudice.  <u>Id.</u>  The original named plaintiffs and former
11  class representatives then proceed to trial on their
12  individual claims.  <u>Id.</u>

13

14                    **III. DISCUSSION**
15      In their Complaint, Plaintiffs defined a collective
16  class consisting of:

17              All persons who are or have been employed
18              by [Defendant] as a Sales Representative,
19              who were either misclassified as exempt,
20              and therefore erroneously denied overtime
21              compensations as required by federal wage
22              and hour laws, or not paid for all time
23              they suffered or permitted to work for
24              [Defendant] and therefore erroneously
25              denied overtime compensation as required
26              by federal wage and hour laws, at any
27              time within the United States within

28

1           three years prior to this action's filing

2           date through the final disposition of

3           this case.

4  (Compl. ¶ 16.)

5

6    In their Motion, however, Plaintiffs seek conditional

7  certification of a narrower collective class consisting

8  of "sales representatives who were classified as exempt

9  employees since June of 2005." (Mot. at 6 n.36; Reply at

10  5.)  Defendant argues that Plaintiffs cannot narrow the

11  class definition at this stage of the litigation, but

12  provides no authority for that argument. (See Opp'n at

13  11-12.)  Indeed, courts routinely narrow class

14  definitions at the certification stage.  See, e.g.,

15  Gibson v. Local 40, Supercargoes and Checkers of Intern.

16  Longshoremen's and Warehousemen's Union, 543 F.2d 1259,

17  1264 (9th Cir. 1976) (approving a narrower class

18  definition than that proposed by the plaintiffs in order

19  to exclude non-typical class members).  Accordingly, the

20  Court considers conditional certification of the

21  following class:

22           All persons who Defendant employs or has

23           employed as a Sales Representative, who

24           Defendant misclassified as exempt since

25           June 1, 2005, and who were therefore

26           denied compensation required by federal

27           wage and hour laws.

28

**A.   First or Second Stage**

Under the two-stage approach to collective class certification, courts apply a lenient standard at the first, or "notice" stage, and a stricter standard at the second stage.  Mooney, 54 F.3d at 1213-14.  Here, Defendant urges the Court to apply the stricter second stage standard in considering Plaintiffs' Motion.

Defendant cites to Smith v. T-Mobile USA, Inc. for their contention that the Court should apply the second stage standard where, as here, the parties have exchanged "voluminous discovery" on class certification issues. (Opp'n at 12-15 (citing Smith v. T-Mobile USA, Inc., No. CV 05-5274 ABC (SSx), 2007 WL 2385131 (C.D. Cal. 2007)).) In Smith, the court initially "applied the 'first tier' analysis to Plaintiffs' Second Motion, based partly on the view that significant discovery was still ongoing, and issued a minute order granting Plaintiffs' Motion for conditional certification." Smith, 2007 WL 2385131, at *2.   In deciding the defendant's motion for reconsideration, however, the court applied the second-tier analysis, because by that time, discovery as to class certification was complete.  Id. at *4.

Defendant also cites Pfohl v. Farmers Ins. Group, No. CV03-3080 DT (RCx), 2004 WL 554834 (C.D. Cal. 2004).  In that case, as in Smith, the parties had already concluded

discovery as to class allegations, so the court applied a
second-tier standard.  <u>Pfohl</u>, 2004 WL 554834, at *2-*3.
Moreover, a second-tier standard was required because the
<u>Pfohl</u> plaintiff moved not for conditional certification,
but for final certification of a collective class.  <u>Id.</u>
at *1, *3.

Here, in contrast to the situation in <u>Smith</u> and
<u>Pfohl</u>, the parties have not finished discovery on class
issues.  (<u>See</u> Opp'n at 15 (conceding that Plaintiffs have
until August 4, 2008 to file their motion for class
certification under Rule 23).)  Moreover, unlike in
<u>Pfohl</u>, Plaintiffs here do not seek final certification,
but only conditional certification.  Additionally, the
procedural posture of this Motion is different from that
in <u>Smith</u>, where the court was deciding a motion for
reconsideration filed by the defendants.  As Defendant
explains, the purpose of the lenient first-tier standard
is to allow Plaintiffs time to "marshal their best
evidence" in support of the final certification motion.
(<u>See</u> Opp'n at 15 (citing <u>Davis v. Charoen Pokphand (USA),
Inc.</u>, 203 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004).)  This
purpose would be frustrated if, where Plaintiffs have
noticed and filed a motion for conditional certification,
Defendant could in its opposition convert the motion into
one for final certification.  Accordingly, the Court
///

1   applies the lenient first-tier standard in consideration
2   of Plaintiffs' Motion for Conditional Certification.

3

4   **B.   Similarly Situated**

5        At the first stage, a plaintiff satisfies its burden
6   of establishing that class members are similarly situated
7   by showing "nothing more than substantial allegations
8   that the putative class members were together the victims
9   of a single decision, policy, or plan."  <u>Thiessen</u>, 267
10  F.3d at 1102-3.

11

12       Defendant employs approximately 1,500 full-time sales
13  representatives in all fifty states and Puerto Rico.
14  (Morgan Decl. Ex. 3, Girard Depo. ("Girard Depo.") at
15  159.)  Sales representatives work both at home and at
16  Wal-Mart stores.  (<u>Id.</u> at 139-49.)  They receive
17  information and products from Defendant at their homes,
18  and deliver the products to Wal-Mart stores.  (<u>See</u> Mot.
19  at 4 (citing, <u>inter alia</u>, Morgan Decl. Ex. 5, Decl.
20  Huntsman ¶ 8).)  At the store, representatives stock
21  products on the store shelves, process product returns,
22  clean and maintain the area where the products are
23  displayed, and set up product displays.  (<u>See</u> <u>id.</u> at 5
24  (citing, <u>inter alia</u>, Morgan Decl. Ex. 5, Decl. Huntsman
25  ¶¶ 8-9).)
26  ///
27  ///
28

1    Plaintiffs contend that "[a]ll Plaintiffs in all
2    states hired by Defendant prior to August of 2006 were
3    classified as exempt from overtime."  (Mot. at 11 (citing
4    Mot. Ex. 6, Johnson Depo. ("Johnson Depo.") at 9-11);
5    Reply at 4 (citing Opp'n Ex. 3, Girard Decl. ¶ 2; Johnson
6    Depo. at 49-50.)  The evidence cited by Plaintiffs for
7    this proposition, however, does not establish that such a
8    policy existed.  The deposition of Debbie Johnson merely
9    establishes that in August of 2006, Defendant
10   reclassified all sales representatives employed in Maine,
11   New Jersey, New Mexico, Washington, California, Alaska,
12   Hawaii, and Puerto Rico from salaried employees to hourly
13   employees.  (Johnson Depo. at 9.)  It also instituted a
14   new policy of classifying all newly hired sales
15   representatives in all states as hourly employees.  (_Id._)
16   These changes applied to sales representatives regardless
17   what store they worked in or what product they were
18   responsible for.  (_Id._ at 10.)  While the deposition
19   establishes that both before and after August of 2006,
20   Defendant classified at least _some_ sales representatives
21   as salaried employees, there is no evidence to establish
22   that it classified _all_ sales representatives as exempt.
23   (_See_ _id._ at 9-11; 49-50.)

24

25   Contrary to Plaintiffs' characterization of a common
26   policy to classify all sales representatives as exempt,
27   Defendant provides evidence that it reviewed the duties
28

1   of each individual representative to determine whether it
2   should classify that employee as exempt. (See Johnson
3   Decl. ¶¶ 4-5.)  Indeed, since 2002 it has re-reviewed the
4   classification of seventeen percent of its sales
5   representatives in response to litigation and a
6   Department of Labor audit. (Id.)  Currently, Defendant
7   classifies approximately seventy-four percent of its
8   sales representatives as exempt and the other twenty-six
9   percent receive hourly wages. (Id. ¶ 8.)  Nevertheless,
10  Defendant's evidence shows that it maintained a policy
11  allowing sales representatives to be classified as
12  exempt, and that it changed that policy after August
13  2006.
14
15      Defendant argues that Plaintiffs are not similarly
16  situated because their job duties vary based on the
17  product the representative sells, the type and sales
18  volume of the Wal-Mart stores to which the representative
19  is assigned, the representative's "level," and the
20  management style of the representative's manager. (Opp'n
21  at 17-18; Johnson Decl. ¶ 3.)  Defendant provides
22  declarations from sixty-four sales representatives to
23  show that different sales representatives cater to
24  different customers, promote different products, and work
25  with differing volumes of product. (See Opp'n at 4-6
26  (citing, inter alia, Girard Decl. ¶¶ 5, 7, 9, 11, 14, 17-
27  20).)  Additionally, representatives vary their sales
28

tactics and product placement based on the Wal-Mart store
manager's wishes and requirements.  (Id. at 6-7 (citing,
inter alia, Girard Decl. ¶ 12.)   Representatives exercise
discretion in ordering differing amounts and types of
product and engaging in various promotions.  (Id. at 7-8
(citing, inter alia, Root Decl. ¶¶ 6, 9).)   Finally,
representatives control their own work schedule.  (Id. at
8-9 (citing, inter alia, Austin Decl. ¶ 5).)

       None of Defendant's examples of representatives'
varied job activities contradict Plaintiffs' contention
that they are similarly situated.   Indeed, Defendant's
own declarations show that Plaintiffs' job duties are
substantially similar, even if the circumstances in which
they perform those duties, and the methods by which they
choose to accomplish the duties, are different.
Plaintiffs are similarly situated in that they receive
products and information from Defendant and stock,
maintain and promote those products in Wal-Mart stores.
(See Opp'n at 2-3; Girard Depo. at 139-49, 159; Mot. at
4-5.)

       Plaintiffs have thus met their burden of setting
forth "substantial allegations" that sales
representatives who comprise the proposed class, i.e.,
those who Defendant classified as salaried employees,
were victims of a common policy allowing sales

1   representatives to be classified as exempt.  <u>See</u>
2   <u>Thiessen</u>, 267 F.3d at 1102-3.  Plaintiffs provide
3   declarations from twenty-five Plaintiffs from eighteen
4   states who Defendant classified as salaried employees.
5   (<u>See</u> Mot. at 12.)  Eighty-one salaried sales
6   representatives already have opted in to the proposed
7   class.  (<u>Id.</u>)  Plaintiff provides substantial evidence
8   that all Class Members were similarly situated with
9   respect to their fundamental job duties.  (<u>See</u> Opp'n at
10  2-3; Girard Depo. at 139-49, 159; Mot. at 4-5.)
11  Accordingly, the proposed class is appropriate for
12  conditional certification.
13
14  **B.   Notice**
15      Plaintiffs must provide notice to potential opt-in
16  class members that is "timely, accurate, and
17  informative."  <u>See</u> <u>Hoffmann-La Roche Inc. v. Sperling</u>,
18  493 U.S. 165, 172 (1989).
19
20      Plaintiffs have included a proposed Notice form with
21  their Motion.  (<u>See</u> Morgan Decl. Ex. 1, Notice of
22  Overtime Lawsuit ("Notice Form").)  Defendant argues that
23  Plaintiffs' proposed Notice Form is inaccurate because it
24  describes a class consisting of all "individuals who
25  worked as sales representatives during the past three
26  years," instead of the class which Plaintiffs seek to
27  certify, which is limited to "sales representatives who
28

16

1   were classified as exempt employees since June 2005."

2   (See Opp'n at 24.)  Plaintiffs argue that this difference

3   is immaterial because they will send the Notice Form only

4   to the more limited class.  (Reply at 12 n.8.)  Moreover,

5   the Notice Form makes clear that only the limited class

6   is eligible to participate, providing that recipients may

7   only join the class if they were employed "by Defendant

8   as a sales representative . . . at any time from June 2,

9   2005 to the present."  (See Notice Form.)  Plaintiffs,

10  however, do not object to amending the Notice Form to

11  reflect the limited class definition.  (Reply at 12.)

12  Accordingly, the Court approves the form of Notice

13  proposed by Plaintiffs, but amended to reflect a class of

14  "sales representatives who were classified as exempt

15  employees since June 2005."

16

17      Defendant also objects that Plaintiffs' proposed

18  deadline of ninety days for conditional class members to

19  opt in is too lengthy.  (Opp'n at 24.)  Defendant argues

20  that a ninety day deadline "will delay litigation."

21  (Id.)  In the context of this case, in which a hearing on

22  class certification pursuant to Rule 23 is set for

23  September 28, 2008, it will not delay the litigation to

24  allow collective class members to opt in for ninety days.

25  Accordingly, the Court approves the ninety day opt-in

26  period.

27  ///

28

1    Plaintiffs also seek an order requiring Defendant to
2 produce the names, addresses, telephone numbers, and
3 dates and location of employment of "all persons employed
4 by Defendant during the relevant statutory period who are
5 or were employed as sales representatives and who are or
6 were classified as exempt."  (Mot. at 14.)  Defendant
7 objects that if it produces this information to
8 Plaintiffs, Plaintiffs are likely to harass its
9 employees.  (Opp'n at 14.)  As evidence of the risk of
10 harassment, Defendant provides the declarations of two
11 employees who have received letters from Plaintiffs
12 asking them to join the lawsuit.  (<u>See</u> Opp'n at 24
13 (citing Long Decl. ¶ 11; Wilson Decl. ¶ 13).)

14

15    Defendant provides no authority for its objection to
16 an order requiring disclosure of employee information.
17 (<u>See</u> <u>id.</u>)  In <u>Stanfield v. First NLC Financial Services,</u>
18 <u>LLC</u>, as here, the defendants argued the court should
19 appoint a third-party administrator to notify potential
20 class members, because disclosure of its employee's
21 contact information to the plaintiffs would compromise
22 the employees' privacy.  No. C 06-3892 SBA, 2006 WL
23 3190527, at *5 (N.D. Cal. 2006).  The plaintiffs argued
24 that such information was relevant and discoverable.  <u>Id.</u>
25 The court agreed that the defendants should disclose the
26 contact information to the plaintiffs because ordering a
27 ///

28

third-party administrator would add to the plaintiffs'
financial burden.  <u>Id.</u>

     As in <u>Stanfield</u>, Plaintiffs here have requested the
employee contact information in discovery, it is relevant
and discoverable, and appointing a third-party
administrator would needlessly increase Plaintiffs'
costs.  Accordingly, an order requiring Defendant to
disclose that information is appropriate.

### IV. CONCLUSION

     For the foregoing reasons, the Court GRANTS
Plaintiff's Motion to Certify Class Conditionally.  The
Court conditionally certifies a class of:

> All persons who Defendant employs or has
> employed as a Sales Representative, who
> Defendant misclassified as exempt since
> June 1, 2005, and who were therefore
> denied compensation required by federal
> wage and hour laws.

     The Court ORDERS Defendant to produce to Plaintiffs,
within ten days of this Order, a list, in electronic and
importable format, of all persons employed by Defendant
as sales representatives since June 2, 2005 and who are
or were classified as exempt employees, along with each
identified employees' name, address, job title, date of

1   employment in that position, and current employment

2   status.

3

4        Plaintiffs' counsel is authorized to send notice of

5   this action to all such persons, in the form set forth in

6   Exhibit 1 to the Declaration of Morgan, amended to

7   reflect a class of "sales representatives who were

8   classified as exempt employees since June 2005."

9   Putative class members are permitted to file notices of

10  consent through ninety days from the entry of this Order.

11

12

13  Dated:  July 10, 2008          _____

14                                 VIRGINIA A. PHILLIPS
                                   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28