1

2

3                                                O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  KEVIN CARTER, JUSTIN          )  Case No. EDCV 08-25-VAP
    CLOUSE, DEBORAH LANASA,       )  (OPx)
12  AND MICHAEL STYLES,           )
    individually, on behalf       )  **[Motion filed on September
13  of all others similarly       )  29, 2008]**
    situated, and on behalf       )
14  of the general public,        )  **ORDER GRANTING MOTION FOR
                                   )  CLASS CERTIFICATION AS TO
15            Plaintiff,           )  OVERTIME CLASS AND DENYING
                                   )  MOTION FOR CLASS
16       v.                        )  CERTIFICATION AS TO REST
                                   )  BREAK CLASS**
17  ANDERSON MERCHANDISERS,       )
    LP, and DOES 1-10,            )
18  inclusive,                    )
                                   )
19            Defendants.         )
    _____     )

20

21

22      Plaintiff Kevin Carter's Motion for Class

23  Certification ("Motion") came before the Court for

24  hearing on November 17, 2008.  After reviewing and

25  considering all papers filed in support of, and in

26  opposition to, the Motion the Court GRANTS the motion as

27  to the overtime class and DENIES the motion as to the

28  rest break class.

# I.   BACKGROUND

Plaintiff Kevin Carter ("Carter") filed a Complaint asserting nine claims under federal, California, and Oregon law.  He now seeks certification under Fed. R. Civ. P. 23(b)(3) of his second and fifth claims.

Plaintiff's second claim asserts violations of California Labor Code § 510 and Industrial Welfare Commission ("IWC") Wage Order No. 4, for failure to pay class members properly for work in excess of eight hours per day or forty hours per week.  (Compl. ¶ 43.)

Plaintiff's fifth claim alleges violations of California Labor Code § 226.7, by failing to "authorize and permit" sales representatives to take two rest breaks of ten minutes each per four hours of work as required by Section 12 of IWC Wage Order No. 4.  (Compl. ¶ 56.)

## A.   PROCEDURAL HISTORY

Plaintiff Carter, with others, filed a Complaint on January 10, 2008, on behalf of himself and all others similarly situated nationwide, naming Anderson Merchandisers, LP as Defendant and asserting nine claims stemming from wage and hour violations.  Plaintiff asserts liability under the federal Fair Labor Standards Act ("FLSA"), the California Labor Code, California

1   Business and Professions Code § 17200, and Oregon

2   statutes.   The Court conditionally certified a collective

3   action under the FLSA on July 10, 2008, of a class of:

4           All persons who Defendant employs or has
            employed as a Sales Representative, who
5           Defendant misclassified as exempt since
            June 1, 2005, and who were therefore
6           denied compensation required by federal
            wage and hour laws.
7

8       This class is the "federal misclassification class."

9   Members had 90 days to opt in.   There were 147 possible

10  class members in California and 32 have opted in.   (Opp'n

11  5.)

12

13      On September 29, 2008, Plaintiff filed a motion for

14  class certification, accompanied by supporting

15  declarations, seeking certification of two classes of

16  workers in California under the California Labor Code,

17  rather than federal law:

18

19      1.   The Overtime Class:  "All current and former

20           California sales representatives who Defendant

21           classified as exempt between January 10, 2004

22           and August 27, 2006."

23

24      2.   The Rest Break Class: "All current and former

25           California sales representatives between January

26           10, 2004 and the present."

27  (Mot. 2.)

28

Defendant filed its Opposition ("Opp'n"), accompanied by supporting declarations, on October 20, 2008. Plaintiff filed his Reply with supporting documents on November 3, 2008.

No evidentiary objections were made by either side.

**B.  FACTS**

   **1.  Overview**

Plaintiff and those similarly situated are or have been employed by Defendant as sales representatives in California during two time periods: January 2004 until August 2006 for the overtime class, and January 2004 to present for the rest break class.  (Compl. ¶¶ 3, 5.) After August 2006, Defendant changed the duties of sales representatives; these changes are relevant only to the rest break class.

Defendant employed Plaintiff Carter as a sales representative from approximately August 2001 until October 2004 and again from February 2006 through August of that year.  (Carter Decl. ¶ 2.)  Thus, he was a sales representative for only part of the time period for which he seeks certification of the two classes – January 2004

1   through October 2004 and February 2006 through August

2   2006.[1]

3

4       Since January 10, 2004, Defendant has employed 256

5   sales representatives in California and currently employs

6   73 in California.[2]  (Mot. 3, citing Declaration of

7   Matthew H. Morgan ("Morgan Decl.") Ex. F, Defendant's

8   Interrogatory Response Set 1 at 6; Opp'n 1.)  Defendant's

9   sales representatives currently work in 174 Wal-Mart

10  stores in California.  (Opp'n 2.)  Sales representatives

11  distribute Defendant's books, music, and videos to Wal-

12  Mart stores.  (Mot. 4, citing Halstead Dep. 27;[3] Carter

13  Decl. ¶ 9.)  Wal-Mart operates two types of  stores in

14  California; both carry the three kinds of Anderson

15  products distributed by California sales representatives.

16  (Mot. 4, citing Halstead Dep. 27.)  Defendant sends out

17  daily instructions and information to sales

18

19  _____

        [1]Defendant admits that corporate policy regarding
20  classification and rest breaks remained the same during
    the relevant time periods.  Defendant states that all
21  California sales representatives were classified as
    exempt prior to August 2006 and that the rest break
22  policy remained the same from 2003 through the present.

23      [2]This number differs from the number of possible
    California members in the federal misclassification class
24  because the overtime and rest break classes cover
    different time periods than the federal misclassification
25  class.

26      [3]Plaintiff failed to comply with Local Rules 16-2.7
    and 32-1 by citing to deposition transcripts without
27  bracketing the text referenced in the deposition
    transcript excerpts.  Future violations may result in the
28  imposition of sanctions.

1   representatives and regularly sends them Point of

2   Purchase ("POP") displays for Wal-Mart stores.

3

4       **2.   Facts regarding the proposed overtime class**

5            **(January 2004-August 2006)**

6       The parties agree California sales representatives

7   were subject to a uniform classification policy during

8   the period for which Plaintiff seeks certification of the

9   overtime class.  "Prior to August 27, 2006, sales

10  representatives in California, with the exception of

11  sales representative trainees, were classified as

12  overtime exempt and were paid a salary plus commission

13  under both the Federal and California outside salesperson

14  exemptions and the Motor Carrier Act."  (Opp'n 2.)

15  During that time, Defendant's handbooks stated,

16  "[o]vertime is expected from all full-time associates."

17  (Morgan Decl. Ex. K at 4; Ex. L at 4.)

18

19       During the January 2004 through August 2006 period

20  there were three levels of sales representatives;

21  Plaintiff alleges all had the same job duties.  (Mot. 4-

22  5, citing Halstead Dep. 22-23; Carter Decl. ¶ 6; Morgan

23  Decl. Ex. M, Declaration of Lillian Brooks ¶ 6,

24  Declaration of Regina Conlee ¶ 6, Declaration of Lannis

25  Fiamengo ¶ 6, Declaration of Julie Green ¶ 6, Declaration

26  of Marily Grotz ¶ 6, Declaration of Andrea Lindsey ¶ 6,

27  Declaration of Robert Lott ¶ 6, Declaration of Deborah

28

Lynch ¶ 6, Declaration of Teresa Olivas ¶ 6, Declaration of William Rogers ¶ 6, Declaration of Tracie Sharp ¶ 6, Declaration of Steven Stewart ¶ 6, Declaration of Robert Winter ¶ 6, Declaration of Joyce Young ¶ 6 (the Brooks, Conlee, Lannis, Green, Grotz, Linsey, Lott, Lynch, Oliva, Rogers, Sharp, Stewart, Winter and Young declarations are collectively referred to as "Sales Representatives' Decls.")  Plaintiff provides declarations of sales representatives who worked at all three levels who describe doing the same work.  (Carter Decl. ¶ 6; Sales Representatives' Decls. ¶¶ 8-13.)

     Defendant seeks to show sales representatives had different jobs because, for example, sales representatives at level 1 did not supervise anyone while sales representatives at levels 2 and 3 supervised other sales representatives.  (See Opp'n 3.)  Defendant also relies on demographic differences between the customer bases served by the stores and the variation in how much floor space each Wal-Mart manager was prone to cede to Defendant's sales representatives.  (Opp'n 11.) Plaintiff contends their duties remained the same in all relevant aspects, despite differences in the representatives' level or the store type.  (Mot. 4-5, citing Sales Representatives' Decls. ¶ 6.)  Both parties agree sales representatives worked at home before and after their work in Wal-Mart stores.

**Work at Home**

Sales representatives did some work at home every day before and after they went to Wal-Mart stores.  (Mot. 5, citing Halstead Dep at 27-28 and Sales Representatives' Decls. ¶¶ 11-13; Mot. 8, citing Sales Representatives' Decls. ¶ 13.)  They used a handheld computer called an "Intermec" to clock in and out[4] and to download and upload information to in order to perform their job duties, such as answering surveys, receiving daily information about sales priorities, processing returns, ordering products, and taking inventory.  (Mot. 5, citing Halstead Dep. at 28-29, 46-47;  Sales Representatives' Decls. ¶ 10.)

At home, sales representatives also received POP materials and packed them into their cars to deliver them to Wal-Mart stores.  Plaintiff alleges sales representatives sorted through the materials at home. (Mot. 6, citing Sales Representatives' Decls. ¶ 11.)[5]

---

[4]Since March 2008 (after the closure of the overtime class) sales representatives have clocked in using an apparently phone-based TCS system.  (Mot. 6, citing Halstead Dep. 46.)

[5]Defendant submitted declarations that some POP material is now shipped directly to Wal-Mart stores and that sales representatives now clock in at home before they perform their morning work.  As these declarations do not address practices between January 2004 and August 2006, they are irrelevant to certification of the overtime class.

Plaintiff asserts from January 2004 through August 2006 sales representatives were never paid for time hauling POP materials.  (Mot. 8.)

**Work at Wal-Mart Stores**

Declarations submitted by Plaintiff show sales representatives stocked shelves with books, music and videos according to "Plan-O-Grams," filled out surveys about stock at the stores, ordered products according to local demand, returned products, and cleaned shelves. (Mot. 6-7, citing Sales Representatives' Decls. ¶ 12.) Sales representatives were also responsible for POP displays and negotiating space in the stores for them. Defendant emphasizes the variation in the stock carried in various stores and the initiative sales representatives used to obtain space for Defendant's displays.  (See, e.g. Curry Decl. ¶¶ 4-7 (selling different goods in different stores and obtaining space for displays).)

**3.   Facts regarding rest break class (January 2004-present)**

From at least January 2004 to present, Defendant has had a uniform and consistent rest break policy in its Associate Handbooks.  (Mot. 9, citing Exs. K, L to Morgan Decl; Opp'n 4.)  According to Defendant, "The Daily Work Schedule policies in the three relevant versions of the

Associate Handbook are substantially similar, and all
state that employees are to take two paid 15-minute rest
breaks each day."  (Opp'n 4.)   The policy in the
handbooks states, "supervisors will determine break
schedules."  (Mot. 9, quoting Exs. K, L to Morgan Decl.;
Declaration of Debbie Johnson in Opposition to Motion for
Class Certification ("Johnson Decl.") Exs. A-C.)
Although Defendant alleges this policy is followed in
facilities where Defendant directly supervises other
classes of workers, it is not followed in Wal-Mart stores
where sales representatives work.  (Opp'n 5; Johnson
Decl. ¶¶ 5-6.)  Where the putative class works, sales
representatives' supervisors are only present one or two
days per month and otherwise communicate with sales
representatives by telephone.  (Opp'n 5.)  According to
Defendant "sales representatives are responsible for
scheduling and taking their own rest breaks."  (Opp'n 5.)

     Defendant has no system for recording rest breaks nor
any way of knowing whether sales representatives are owed
premia for being deprived of their breaks.  (Mot. 9:20-
22, citing Halstead Dep. 98.)  Defendant submitted no
evidence that anyone has ever been paid for a missed
break or that there is any system to determine whether a
premium is owed.  Plaintiff did submit evidence that
sales representatives did not take breaks and were not
paid premia but failed to offer evidence of how Defendant

1   discouraged or failed to authorize or permit sales

2   representatives from taking rest breaks.

3

4                    **II.   LEGAL STANDARD**

5       Under Rule 23(a), in order to bring a class action, a

6   plaintiff must demonstrate:

7               (1) the class is so numerous that joinder
                of all members is impracticable;
8               (2) there are questions of law or fact
                common to the class;
9               (3)   the   claims   or   defenses   of   the
                representative parties are typical of the
10              claims or defenses of the class; and
                (4)   the   representative   parties   will
11              fairly   and   adequately   protect   the
                interests of the class.
12

13  Fed. R. Civ. P. 23(a).   In addition to these

14  prerequisites, a plaintiff must satisfy one of the

15  prongs of Rule 23(b) in order to maintain a class

16  action.   Where, as here, a plaintiff moves for

17  class  certification  under  Rule  23(b)(3),  the

18  plaintiff must prove that:

19              the questions of law or fact common to
                class   members   predominate   over   any
20              questions   affecting   only   individual
                members,   and   that   a   class   action   is
21              superior   to   other   available   methods   for
                fairly  and  efficiently  adjudicating  the
22              controversy.

23
    Fed. R. Civ. P. 23(b).
24

25

26      Class actions have two primary purposes:   to further

27  judicial economy by avoiding multiple suits and to

28  protect the rights of persons who "might not be able to

present claims on an individual basis."  <u>Haley v.</u>
<u>Medtronic, Inc.</u>, 169 F.R.D. 643, 647 (C.D. Cal. 1996).
The party seeking class certification bears the burden of
demonstrating that it has met each of the four
requirements of Rule 23(a) and at least one of the Rule
23(b) requirements.  <u>Zinser v. Accufix Research Inst.</u>,
253 F.3d 1180, 1186 (9th Cir. 2001).

    The Court acts as a fiduciary for the absent class
members, and "must conduct an independent and rigorous
analysis of the moving party's claims to examine whether
the requirements of Rule 23 are met."  <u>In re Paxil</u>
<u>Litig.</u>, 212 F.R.D. 539, 543 (C.D. Cal. 2003) (quotations,
citation omitted).  In addition, to meet its burden the
moving party "'must provide facts to satisfy these
requirements; simply repeating the language of the rules
. . . is insufficient.'"  <u>Id.</u> (quoting <u>Bates v. United</u>
<u>Parcel Serv.</u>, 204 F.R.D. 440, 443 (N.D. Cal. 2001))
(ellipsis in original).

                    **III.   DISCUSSION**
**A.   RULE 23(a)**
    Both classes satisfy the Fed. R. Civ. P. 23(a)
factors.
///
///
///

1      **1.   Numerosity**

2          In determining whether under Rule 23(a)(1), joinder

3      of all members is "impracticable," courts have held the

4      plaintiff need not show it would be "impossible" to join

5      every class member.  <u>Haley</u>, 169 F.R.D. at 647.

6      Additionally, there is no specific number cut-off, as the

7      peculiar facts of each case may be examined.  <u>Ballard v.</u>

8      <u>Equifax Check Servs., Inc.</u>, 186 F.R.D. 589, 594 (E.D.

9      Cal. 1999).  Courts have not required evidence of

10     specific class size or identity of class members to

11     satisfy the requirements of Rule 23(a)(1).  <u>Robidoux v.</u>

12     <u>Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993).

13

14         Defendant does not argue that numerosity does not

15     exist here, and hence concedes Plaintiff has established

16     this criterion.  (<u>See</u> Opp'n 7.)  Both the overtime and

17     rest break classes meet the numerosity requirement.

18     Plaintiff alleges both classes have at least 256 members

19     while Defendant asserts the overtime class contains 117

20     sales representatives and the rest break class 338 sales

21     representatives.  (Mot. 12; Johnson Decl. ¶ 3.)

22

23     **2.   Commonality**

24         Courts have construed Rule 23(a)(2)'s commonality

25     requirement permissively.  <u>Hanlon v. Chrysler Corp.</u>, 150

26     F.3d 1011, 1019 (9th Cir. 1998).  As the Ninth Circuit

27     has explained:

28

1
2
3
4

> All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

<u>Id.</u>

5

6   Additionally, another Court in this District has

7   stated that "the commonality requirement is interpreted

8   to require very little."  <u>Paxil</u>, 21 F.R.D. at 549.

9   "[F]or the commonality requirement to be met, there must

10   only be one single issue common to the proposed class."

11   <u>Haley</u>, 169 F.R.D. at 648.

12

13         **a.  Overtime class**

14   Commonality is met as to the overtime class.

15   Plaintiff produced handbooks from the relevant period

16   which state: "Overtime is expected from all full-time

17   associates."  (Morgan Decl. Ex. K at 4, Ex. J. at 5.)

18   More importantly, Plaintiff also produced declarations

19   from 15 sales representatives who regularly worked over

20   40 hours between 2004 and 2006.  (Carter Decl. ¶ 4;

21   Sales Representatives' Decls. ¶ 4.)  As Defendant admits,

22   all sales representatives in California were uniformly

23   classified as non-exempt at that time based on a common

24   legal theory: "Prior to August 27, 2006 sales

25   representatives in California, with the exception of

26   sales representative trainees, were classified as

27   overtime exempt and were paid a salary plus commission

28

14

under both the Federal and California outside salesperson exemptions and the Motor Carrier Act."  (Opp'n 2:8-11.) The frequent work over forty hours and the common classification present common factual issues; the correctness of the uniform classification raises a common legal question.

### b.   Rest break class

Plaintiff satisfies the commonality requirement for the rest break class.  The same employee handbooks governed all sales representatives, and established a policy that remained substantially similar through three editions:  supervisors were to set sales representatives' breaks.  (Opp'n 4; Reply 5.)  Both sides agree supervisors did not schedule rest breaks.  (Reply 5; Opp'n 5.)  Plaintiff adduced evidence sales representatives do not remember ever taking rest breaks, as well as evidence Defendant has no method of paying an employee for a missed break.  (Reply 3:20-23, citing Halstead Dep. at 61-62).  Defendant seeks to impeach Plaintiff Carter's declaration that he does not recall taking rest breaks with his deposition testimony, (Opp'n 9:3-9), but the deposition testimony cited refers not to rest breaks, but meal breaks.  Thus, this attempt at impeachment fails.

///

///

1    Defendant also adduced declarations of employees who
2   recalled taking rest breaks.  Some of these declarants,
3   however, admit there were times they did not take rest
4   breaks; furthermore, none assert they were paid for those
5   missed breaks.  In any event, this conflicting evidence
6   does not prevent a finding of commonality.  At the class
7   certification stage, the Court undertakes a rigorous
8   analysis of the evidence presented, but does not weigh
9   the ultimate merits of the case in a way that would usurp
10  the jury's role.  See Dukes v. Wal-Mart, Inc., 509 F.3d
11  1168, 1177-78 (9th Cir. 2007.)

12

13      **3.  Typicality**
14    To gauge typicality, a "court does not need to find
15  that the claims of the purported class representative are
16  identical to the claims of the other class members."
17  Haley, 169 F.R.D. at 649.  The Ninth Circuit in Hanlon
18  further wrote that "[u]nder the rule's permissive
19  standards, representative claims are 'typical' if they
20  are reasonably co-extensive with those of absent class
21  members; they need not be substantially identical."  150
22  F.3d at 1020.  Additionally, the class representatives
23  "must be able to pursue [their] claims under the same
24  legal or remedial theories as the unrepresented class
25  members."  Paxil, 212 F.R.D. at 549.
26  ///
27  ///
28

16

1    While commonality requires only one unifying factual
2 or legal question, typicality requires "'that the claims
3 of the class representatives be typical of those of the
4 class'" and is achieved "'when each member's claim arises
5 from the same course of events, and each class member
6 makes similar legal arguments to prove the defendant's
7 liability.'"  Paxil, 212 F.R.D. at 550 (quoting Armstrong
8 v. Davis, 275 F.3d 849, 868 (9th Cir. 2001)).
9
10              **a.  Overtime Class**
11    Plaintiff satisfies the typicality requirement for
12 the overtime class.  Plaintiff, like other California
13 sales representatives, was classified as exempt when he
14 worked as a sales representative during the January 2004
15 through August 2006 period.  (Mot. 15.)  The employee
16 handbook provision, stating an expectation of overtime
17 work, bound Plaintiff and all other sales
18 representatives.  (Morgan Decl. Exs. K, L.)
19
20    The class includes sales representatives at levels 1,
21 2, and 3.  Plaintiff Carter worked as a level 1, 2, and 3
22 sales representative and stated, "[r]egardless of level,
23 my job duties as a sales representative in California
24 remained consistent throughout my employment . . . ."
25 (Carter Decl. ¶6.)  Throughout that period, he worked
26 more than 40 hours a week and did not receive
27 compensation for it.  (Carter Decl. ¶ 4.)  Plaintiff
28

produced evidence from other sales representatives,
stating they experienced these conditions.  (Carter Decl.
¶¶ 8-13;  Sales Representatives' Decls. ¶¶ 4-5, 8-13.)
Plaintiff Carter did similar tasks and was classified in
the same way as other sales representatives; hence, his
claim is typical, as it arises from the same course of
events.  See Paxil, 212 F.R.D. at 550.

### b.  Rest break class

The typicality requirement is met for the rest break
class.  Plaintiff Carter, like all sales representatives,
rarely was supervised directly.  Like other sales
representatives, Plaintiff Carter worked under a uniform
policy where supervisors had the responsibility to set
rest breaks, and a uniform practice that they did not do
so.

Defendant seeks to defeat typicality by arguing
Plaintiff Carter knew of the rest break policy.
Knowledge of the policy set out in the employee handbook
is relevant only if informing employees about the rest
break policy is sufficient, standing alone, to satisfy
the obligation created by the IWC wage orders that
employers "authorize and permit" rest breaks.  (See
Compl. ¶ 54, citing IWC Wage Order 4.)  This common legal
question tends to support rather than undermine

1   typicality.  Accordingly, Plaintiff has established

2   typicality for the rest break class.

3

4       **4.   Adequacy of representation**

5       Traditionally, courts have engaged in a two-part

6   analysis to determine if the plaintiffs have met the

7   requirements of Rule 23(a)(4): (1) the class

8   representatives must not have interests antagonistic to

9   the unnamed class members and (2) the representatives

10  must be able to prosecute the action "vigorously through

11  qualified counsel."  Lerwill v. Inflight Motion Pictures,

12  Inc., 582 F.2d 507, 512 (9th Cir. 1978).

13

14      **a.   Named plaintiff**

15      Plaintiff Carter is an adequate class representative

16  because he has participated in this litigation by

17  soliciting other class members, helping his counsel

18  assess documents produced by Defendant, and responding to

19  written discovery requests.  (Reply 7; Carter Decl. ¶

20  14.)

21

22      Defendant asserts Plaintiff Carter is not an adequate

23  representative because he was not a sales representative

24  for the entire January 2004- August 2006 period.  (Opp'n

25  13.)  Defendant tries to cast this as creating some sort

26  of conflict with the class, but neither cites authority

27  for this proposition nor provides evidence of changes

28

that occurred during the time Carter did not work as a sales representative.  The Court finds he can adequately represent the class.

### b.  Class counsel

Adequate representation "'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  <u>Paxil</u>, 212 F.R.D. at 550 (quoting <u>Crawford v. Honig</u>, 37 F.3d 485, 487 (9th Cir. 1994).  Courts now determine the adequacy of counsel under Rule 23(g).  <u>See, e.g.</u>, <u>Hill v. Merrill Gardens, L.L.C.</u>, 2005 WL 2465250, *3 (N.D. Ind. 2005).

Rule 23(g) provides,

> a court that certifies a class must appoint class counsel.  In appointing class counsel, the court:
> (A) must consider:
> (1) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

///

///

1    Plaintiff offers proof of the adequacy of his
2  counsel.  Defendant offers no opposition to the adequacy
3  of class counsel and hence concedes this criteria.
4  (Opp'n 13-14).  Plaintiff avers his counsel consists of a
5  qualified law firm with extensive experience in class
6  action and wage and hour litigation.  (Mot. at 16.)
7  Counsel's firm employs 19 lawyers and has represented
8  employees exclusively for the past 15 years.  (<u>Id.</u>
9  (citing Declaration of Donald H. Nichols Decl. ¶ 3).)  It
10 currently is counsel of record on over 60 class or
11 collective action cases, most of which are wage and hour
12 cases.  (<u>Id.</u>)  Plaintiff's lead counsel has practiced
13 employment law for 25 years.  (<u>Id.</u>)

14

15    Plaintiff has demonstrated sufficiently that his
16 counsel will represent the proposed classes adequately.
17 Counsel has identified and investigated the claims in
18 this action, has extensive experience handling class
19 actions similar to this one, has demonstrated knowledge
20 of the applicable law, and has adequate resources to
21 represent the proposed classes.

22

23    For the above reasons, the requirements of Fed. R.
24 Civ. P. 23(a) are met by both the overtime and rest break
25 classes.
26 ///
27 ///

28

**B.   Rule 23(b)(3)**

In addition to meeting the prerequisites for class certification under Rule 23(a), a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action.  Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove that:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of
> separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

**1.   Overtime class**

Common issues predominate regarding the overtime class and a class action is the superior way to resolve the dispute.  All California sales representatives were subject to uniform policies and expectations.  They were classified as exempt from overtime from January 2004 until August 2006 and bound by handbooks stating "Overtime is expected from all full-time associates."

22

1 (Mot. 18, citing Morgan Decl. Ex. K at 4, Ex. L at 5.)

2 Plaintiff has produced evidence they all had the same job

3 responsibilities.  Some worked at all three levels and

4 can testify their job responsibilities remained the same.

5 (Carter Decl. ¶ 6; Declaration of Joyce Young ¶ 6.)

6

7      Defendant asserts several arguments against a finding

8 of predominance and superiority as to the overtime class.

9 Defendant seeks to establish that sales representatives'

10 work varied substantially depending on the customer base

11 and the manager of a particular Wal-Mart store and that

12 therefore application of the outside salesperson

13 exemption must be determined on a case-by-case basis.

14 (Opp'n 23:22-28.)  The declarations submitted by

15 Defendant to support this argument are unconvincing.  The

16 11 submitted by those who are not District Managers do

17 not  address their job duties during the 2004 to 2006

18 period.  The Court does not assume the duties remained

19 constant, as five of the declarations are submitted by

20 workers who have now achieved the rank of level 4 sales

21 representative, a category that did not exist from

22 January 2004 through August 2006.

23

24      Second, the declarations undermine Defendant's

25 attempt to show the great discretion exercised by sales

26 representatives: it appears sales representatives began

27 their tasks with a model stock or automatically generated

28

orders for their stores.  (<u>See</u> Declaration of Jim
McCollum ¶ 9; Declaration of Gloria Miller¶ 9;
Declaration of Brenda Mize ("Mize Decl.") ¶ 6;
Declaration of Linda O'Connor ¶ 9.)  Although it is not
clear when that practice took place, it is consistent
with the information submitted by Plaintiff that
described centralized distribution of information about
orders and sales priorities from January 2004 through
August 2006.  If Defendant wishes to show that various
exemptions applied to sales representatives, they bear
the burden to do so.  (Reply 13:21-14:2.)  Defendant has
not carried that burden here.  For example, although
Defendant would like to show sales representatives spent
most of their time on non-menial tasks, only one of the
declarations offered by Defendant, that of Mize, provides
an estimate of how much time was spent on various tasks.
(Mize Decl. ¶ 4.)


     Third, Defendant argues the lackluster response by
sales representatives to the nationwide FLSA collective
action notice shows "clear hostility" to a state class
certification.  (Opp'n 22.)  Defendant produced
declarations of employees who chose not to join that
collective action because they believe that they are
being adequately compensated.  Among the declarations
submitted by Defendant, the statements of sales
representatives at levels 3 and 4 are better represented

1  than those at levels 1 and 2.[6]  Furthermore, the concerns

2  of these 'objectors' are being raised by Defendant, not

3  by the employees on their own initiative.

4

5      Fourth, Defendant relies on Leuthold v. Destination

6  America, Inc., 224 F.R.D. 462 (N.D. Cal. 2004) to suggest

7  the response rate to the FLSA collective action could

8  raise jurisdictional concerns because state law claims

9  would dominate over federal claims.  (Opp'n 22-23.)  The

10 Court declines to follow this line of argument.  The FLSA

11 was not designed to preempt more protective state laws.

12 Thorpe v. Abbot Laboratories, Inc., 534 F. Supp. 2d 1120,

13 1124 (N.D. Cal. 2008).

14

15     Finally, Plaintiff satisfies the 23(b)(3)(A)-(D)

16 factors regarding the overtime class.  First, sales

17 representatives appear to have been relatively modest

18 earners, earning about $36,000 in 2006; thus, they have

19 an interest in centralized adjudication of their wage-

20 and-hour claims.  (Mot. 21.)  Second, neither party

21 points to other suits regarding these workers' claims.

22 One of the declarations offered by Defendant, originally

23 offered in opposition to the motion for conditional

24 certification, mentions a 2002 case captioned Wiberg v.

25 Anderson regarding Defendant's wage and hour practices

26 _____

27     [6]At the hearing on this Motion, defense counsel
   suggested this was because of the passage of two years
28 since the closure of the overtime class.

but Defendant does not discuss that case in its
Opposition now before the Court.  (See Declaration of
Debbie Johnson dated June 13 2006 ("June 13 Johnson
Decl."), Ex. B to Declaration of Daniel J. Coyle.)
Third, it is desirable to continue litigation of these
workers' claims before this Court, as they all spring
from a common set of circumstances and are governed by a
single set of state laws.  Fourth, as class actions go,
management difficulties are unlikely regarding a class of
less than 300 regarding violations of a single state's
laws.

     For the reasons above, the Court GRANTS Plaintiff's
motion for certification of the overtime class.

              2.  Rest break class
     Certification is not warranted for the rest break
class because a class action is not the superior method
by which to adjudicate these claims: the evidence offered
by Plaintiff does not suggest Defendant's actions
violated the law.

     The same picture emerges from the 15 declarations
submitted by Plaintiff and the 17 declarations submitted
by Defendant: sales representatives were subject to a
uniform written corporate policy that sales
representatives were to take breaks as determined by

1    their supervisors; supervisors did not actually set

2    breaks; sales representatives were not directly

3    supervised most of the time.  Plaintiff offered testimony

4    of a corporate representative that Defendant does not

5    know whether sales representatives take their breaks and

6    had no way of knowing when a sales representative needed

7    to be paid for a denied break.  (Halstead Dep. 98:9-

8    99:4.)

9

10       Plaintiff submitted declarations from 15 sales

11   representatives who do not remember taking rest breaks

12   while Defendant submitted declarations from sales

13   representatives who do remember taking rest breaks.  This

14   suggests some took breaks but some did not.  The Court

15   might be inclined to certify the class if the

16   declarations submitted by Plaintiff suggested some causal

17   mechanism between any action, policy, or practice of

18   Defendant and sales representatives' missed rest breaks.

19   In Cicairos v. Summit Logistics, Inc., on which Plaintiff

20   relies, the plaintiff truck drivers were required to

21   continually log their time and their activities with a

22   computer system that provided no code to use for rest

23   breaks; "[s]ome drivers skipped their rest breaks because

24   of this policy."  133 Cal. App. 4th 949, 956 (2005).  In

25   addition, the employer placed the drivers under time

26   pressure.  Id.  Here, in contrast, Plaintiff, like the

27   other 14 sales representatives whose declarations were

28

submitted simply states "[a]s a sales representative, I
do not recall ever taking an uninterrupted ten minute
break . . . . My supervisor did not determine my rest
break schedule."  (Carter Decl. ¶ 7; Sales
Representatives' Decls. ¶ 7.)  Plaintiff does not point
to any aspect of Defendant's operations by which they
failed to provide rest breaks nor even allege he felt
rushed or pressed for time.  <u>Contra Cicairos</u>, 133 Cal.
App. 4th at 956.

    Plaintiff has the burden of demonstrating
certification is warranted.  Plaintiff's evidence shows
that Defendant broke company policy by not scheduling
breaks but fails to show how that violated California's
Labor Code.  All the declarations submitted by Plaintiff
state "[m]y supervisor did not determine my rest break
schedule;" in other words, Plaintiff does not allege
Defendant took any action, one way or the other, to
determine the schedule.  These declarations might support
a claim if <u>Cicairos</u> established that under California law
the employer had an obligation to take affirmative steps
to ensure rest breaks were taken.[7]  The <u>Cicairos</u> court
stated in a discussion of meal periods that "employers
have 'an affirmative obligation to ensure that workers

---

[7]Defendant relies on California Appeal Court case
<u>Brinker v. Superior Court</u>, 165 Cal. App. 4th 25 (2008),
now under review by the California Supreme Court, and
hence temporarily de-published.

are actually relieved of all duty'" but gave no standard for judging employer responsibility regarding rest breaks.  <u>Cicairos</u>, 133 Cal. App. 4th at 962.  The <u>Cicairos</u> court concluded summary judgment was not proper for defendant because defendant did not prove it supplied plaintiffs with rest periods.  <u>Id.</u> at 963.

The Court declines to exercise its discretion to certify a class based solely on rest breaks when Plaintiff cannot point to any authority clarifying the nature of the employer's duty.  Indeed, at the hearing on this matter, Defendant's counsel directed the Court to <u>Brinkley v. Public Storage, Inc.</u>, 2008 WL 4716800 (Cal. App. 2008), an opinion issued October 28, 2008.  In <u>Brinkley</u>, the California Court of Appeal considered a former employee's motion to certify a class of workers who were not provided rest breaks and meal breaks.  The Court declined to find that California law requires employers to "ensure" workers took their rest periods and needed only make these breaks available.  <u>Id.</u> at *1.

For these reasons, a class action is not superior and certification of a rest break class is not warranted.

1

**IV.   CONCLUSION**

2      For the above reasons, the Court GRANTS Plaintiff's

3   Motion to certify the overtime class but DENIES

4   Plaintiff's Motion to certify the rest break class.

5

6

7

8

9   Dated:  _November 18, 2008_    _____
                                        VIRGINIA A. PHILLIPS
10                                    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28