NICHOLS KASTER, PLLP
Donald H. Nichols, MN State Bar No. 78918*
nichols@nka.com
Paul J. Lukas, MN State Bar No. 22084X*
lukas@nka.com
Matthew H. Morgan, MN State Bar No. 304657*
morgan@nka.com
Reena I. Desai, MN State Bar No. 0388311*
rdesai@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Facsimile (612) 215-6870
*admitted *pro hac vice*

ERVIN, COHEN & JESSUP, LLP
Eric W. Cheung, CA State Bar No. 235008
echeung@ecjlaw.com
9401 Wilshire Blvd, Ninth Floor
Beverly Hills, CA  90212
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for individual and representative Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kevin Carter, Justin Clouse, and Deborah Lanasa, individually, on behalf of others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> Anderson Merchandisers, LP and DOES 1-10 inclusive, <br><br> Defendants. | Case No. EDCV08-00025 VAP (OPx) <br><br> **MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF JOINT STIPULATION OF SETTLEMENT AND RELEASE** <br><br> Honorable Virginia A. Phillips <br> Complaint Filed: January 10, 2008 <br> Hearing Date: January 4, 2010 <br> Time: 10:00 a.m. |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................1

II.     PROCEDURAL AND FACTUAL HISTORY ..........................................1

    A.  Procedural Posture and the Parties ....................................................1

    B.  Mediation and Settlement..................................................................3

    C.  Settlement Class ................................................................................3

    D.  Settlement Allocation .......................................................................3

III.    ARGUMENT .............................................................................................5

    A.  The Proposed Settlement Agreement is Fair, Reasonable, and Adequate .......5

        1.  Strength of plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation...........................................5

        2.  The risk of maintaining class action status through trial ...............6

        3.  The amount offered in settlement ...............................................7

        4.  Extent of discovery completed and stage of proceedings.............8

        5.  The experience and views of counsel ..........................................8

        6.  The views of class members ......................................................9

        7.  Release of claims .....................................................................9

    B.  The Court Should Approve the Proposed Notice and Claim Form ...............10

        1.  Proposed notice and claim forms...............................................10

        2.  Administration procedure .........................................................11

        3.  Claims procedure ....................................................................12

    C.  Attorneys' Fees...............................................................................13

    D.  Service Payments to Named Plaintiffs .............................................13

IV.     CONCLUSION.......................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>CASES</u>**

3

4

**<u>Alberto v. GMRI, Inc.</u>,** 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) ............... 14

5

**<u>Boyd v. Bechtel Corp.</u>,** 485 F. Supp. 610 (N.D. Cal. 1979) ..................................... 9

6

**<u>Churchhill Village, L.L.C. v. General Electric</u>,** 361 F.3d 566 (9th Cir. 2004)... 10

7

**<u>Class Plaintiffs v. City of Seattle</u>,** 955 F.2d 1268 (9th Cir. 1992) .......................... 5

8

9

**<u>Cook v. Niedert</u>,** 142 F.3d 1004 (7th Cir. 1998) ..................................................... 14

10

**<u>In re Corregated Container Antitrust Litig.</u>,**
659 F.2d 1322 (5th Cir. 1981) .................................................................................... 7

11

12

**<u>Ellis v. Naval Air Rework Facility</u>,** 87 F.R.D. 15 (N.D. Cal. 1980) ...................... 9

13

**<u>Hoffmann-La Rouch Inc. v. Sperling</u>,** 493 U.S. 165 (1989)................................. 10

14

15

**<u>Officers for Justice v. Civil Serv. Comm'n</u>,** 688 F.2d 615 (9th Cir. 1982) ........ 5,7

16

**<u>Paul, Johnson, Alston & Hunt v. Graulty</u>,** 886 F.2d 268 (9th Cir. 1989)............ 13

17

**<u>Sandoval v. Tharaldson Employee Mgmt.</u>,**
2009 WL 3877203 (C.D. Cal. Nov. 17, 2009) ........................................................... 5

18

19

**<u>Shy v. Navistar International Corp.</u>,**
1993 WL 1318607 (S.D. Ohio May 27, 1993)........................................................... 7

20

21

**<u>Stanton v. Boeing Co.</u>,** 327 F.3d 938 (9th Cir. 2003) ....................................... 13,14

22

**<u>Van Vranken v. Atlantic Richfield Co.</u>,** 901 F. Supp. 294 (N.D. Cal. 1995)..13,14

23

24

**<u>RULES</u>**

25

Fed.R.Civ.P. 23(c)(2)(B) ......................................................................................... 10

26

Fed.R.Civ.P. 23(e) ................................................................................................... 10

27

28

**MEMO IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## I.    <u>INTRODUCTION</u>

Plaintiffs Carter, Clouse, and Lanasa (collectively, "Plaintiffs") and Defendant Anderson Merchandisers, LP ("Defendant") have reached a proposed settlement of $3,625,000.  The terms of the proposed settlement are set forth in the Joint Stipulation of Settlement and Release[1] ("Settlement Agreement") filed concurrently with this motion.  The Settlement is a product of an arms-length negotiation between the parties and is a fair, adequate and reasonable resolution.  Moreover, the proposed notice and claim form provide a fair and accurate description of the settlement, and provide Class members a fair opportunity to evaluate the settlement in order to decide whether to participate.

Accordingly, the Court should grant Plaintiffs' Motion for Preliminary Approval of the Joint Stipulation of Settlement and Release[2] and approve the form and proposed manner of distribution of the class notice and claim forms.

## II.    <u>PROCEDURAL AND FACTUAL HISTORY</u>

### A.    **Procedural Posture and the Parties**

On January 10, 2008, Plaintiffs filed a proposed class action Complaint in the United States District Court for the Central District of California, Eastern Division, on behalf of themselves and other similarly situated current and former employees of Defendant, alleging the following claims for relief:  (1) failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. section 201, *et seq.*); (2) failure to pay overtime compensation in violation of California law (California Labor Code section 510, 1194 and 1198, and IWC Wage Order(s)); (3) waiting time penalties (California Labor Code sections 201-203); (4) failure to provide itemized wage statements (California Labor Code section 226); (5) failure to provide and/or authorize meal and rest periods (California Labor Code section 226.7); (6) violation of California Business and Professions Code

---

[1] The parties will file with the Court a fully executed Joint Stipulation of Settlement and Release as soon as possible.
[2] This motion is unopposed.

section 17200 *et seq.*; (7) failure to pay overtime compensation in violation of Oregon law (ORS sections 653.261, 653.055 and OR ADC 839-020-0030); (8) failure to pay wages upon separation in violation of Oregon law (ORS sections 162.140 and 162.150); and (9) failure to provide appropriate rest breaks in violation of Oregon law (ORS sections 653.261, 653.055 and OR ADC 839-020-0030). (Dkt. 1.)

Defendant is a Texas limited partnership doing business throughout the United States. (Dkt. 15 at ¶ 10.)  Defendant distributes books, children's books, music and video to Wal-Mart stores. (Dkt. 49-4 at ¶ 2.)  Plaintiffs are current or former sales representatives employed by Defendant.  (Dkt. 1 at ¶ 1.)

The Court conditionally certified the collective action under the FLSA on July 10, 2008.  (Dkt. 57.)  On November 18, 2008, the Court granted Plaintiffs' motion to certify the California overtime class but denied the motion to certify the rest break class. (Dkt. 79.)   There are currently a total of 313 eligible FLSA "opt-in" Plaintiffs who have filed consent forms to join this suit[3], as well as 174 Rule 23 California class members.  (Declaration of Matthew H. Morgan ("Morgan Decl." ¶ 3.)

The parties also engaged in substantial motion practice by filing cross-motions for summary judgment, and Defendant moved for decertification of the collective class.  The parties reached a settlement prior to the scheduled hearing of these motions, which was set for October 19, 2009.

///

_____

[3] The related case <u>Massoud v. Anderson Merchandisers</u> was filed on November 26, 2008 in the United States District Court for the Northern District of Texas. Following an unopposed motion, the Court transferred venue to the United States District Court for the Central District of California, Eastern Division, where this case is venued.  The <u>Massoud</u> case was initiated because several former or current sales representatives filed late consent forms in this action and therefore these Plaintiffs, which currently consist of 29 eligible Plaintiffs, could prosecute their claims against Defendant.  The 29 Plaintiffs in <u>Massoud</u> would have otherwise been part of this action if they had filed their consent forms during the notice period. (Morgan Decl. ¶ 3.)

-2-

### B.    Mediation and Settlement

The parties participated in two mediations sessions with mediator Michael J. Loeb, Esq. from JAMS in San Francisco on May 13, 2009, and again on October 9, 2009. (Morgan Decl. ¶ 4.)  A Joint Notice of Settlement was filed with the court on October 12, 2009. (Dkt. 113.)

### C.    Settlement Class

For the purpose of this Settlement Agreement, the "Settlement Class" consists of two classes of Plaintiffs/Claimants who have worked for Defendant as sales representatives (collectively, "Class Members" or "Settlement Class") between January 10, 2004, and the present:

> All FLSA "opt-in" Plaintiffs who have filed consent to join forms in Carter v. Anderson Merchandisers, EDCV08-00025 VAP (OPx) (C.D. Cal. 2008) (the "Action"), as of October 9, 2009, and who were employed by Defendant as salaried, exempt sales representatives between January 10, 2005, and October 9, 2009 ("FLSA Class Period");

> All "Rule 23" California class members in Carter v. Anderson Merchandisers, EDCV08-00025 VAP (OPx) (C.D. Cal. 2008), who have not filed "opt-out" notices and who were employed by Defendant as salaried, exempt sales representatives in California between January 10, 2004, and August 27, 2006 ("California Class Period").

(Ex. 1 at ¶ 12(d)(3)).

### D.    Settlement Allocation

The settlement resolves the claims of the 313 FLSA "opt-in" Plaintiffs and 174 "Rule 23" California class members.  In consideration for settlement and a release of all claims of the Settlement Class against Defendant, Defendant agrees to pay a total sum of $3.625 million.  Defendant has agreed to make payments to Plaintiffs from the Net Settlement Fund (defined below), to each Class Member

1    who was employed by Defendant as a salary exempt sales representative at any

2    time during the relevant Class Period, and who submits a valid and timely Claim

3    Form, a payment based on the ratio of the number of weeks each Class member

4    worked as a salary exempt sales representative during the Class Period to the total

5    number of weeks all Class Members worked as a salary exempt sales representative

6    during the Class Period.  (Ex. 1 at ¶ 12(d)(1)).  All Claim Forms must be signed,

7    completed in their entirety and timely mailed to be considered valid.  (Id.)  The

8    "Net Settlement Fund" is the balance of the Settlement Fund after deducting:

9    (1) the payments made from the Settlement Fund for attorneys' fees and costs[4],

10    including settlement administration costs,[5] (2) recognition payments to the named

11    Plaintiffs[6], and (3) a contingency fund of Ten Thousand Dollars ($10,000) to be

12    administered by Class Counsel for use in addressing any late or disputed claims by

13    Class members or unanticipated costs of concluding this settlement (the

14    "Contingency Fund").  (Id.) Considering the aforementioned deductions, the Net

15    Settlement Fund to be distributed to Class members will be approximately

16    $2,616,790.  (Morgan Decl. ¶ 6.)  The average recovery for 487 Class Members is

17    approximately $5,071.[7] (Id.)  No amount will revert back to Defendant.

18    ///

19    ///

20

21    [4] Class Counsel will seek attorneys' fees in the amount of twenty-five percent (25%)
of the total Settlement Fund for a total $906,250, and reasonable litigation costs for

22    the Carter and Massoud Actions which are currently approximately $75,960.77.
(Morgan Decl. ¶ 5).  Plaintiffs suggest that the approval of attorneys' fees is best

23    reserved for final approval of the settlement.  Plaintiffs will include a brief
argument regarding attorneys' fees at this time and plan to file a full and complete

24    application in conjunction with the final approval papers.  Plaintiffs will provide
full briefing regarding fees upon request if the Court prefers to review the issue at

25    the present time.
[5] Class Counsel requests to be the administrator of the settlement in order to lower

26    administrative costs and to increase Class member participation in the settlement.
The approximate cost to administer the settlement is $10,000.  To the extent costs

27    are less than $10,000, such amount will be donated to the cy pres beneficiary
indicated in ¶ 24 of the Settlement Agreement.  (Morgan Decl. ¶ 6)

28    [6] Plaintiffs Carter, Lanasa and Clouse in the amounts of $2,500, $2,500, and $1,000
respectively.
[7] This average includes the allocations to the Plaintiffs in the Massoud Action.

## III.   ARGUMENT

### A. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate

In determining whether a settlement is fair, reasonable, and adequate, courts balance several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[8] and the reaction of the class members to the proposed settlement.

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir.1992) (citing Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir.1982)); Sandoval v. Tharaldson Employee Mgmt., 2009 WL 3877203, *5 (C.D. Cal. Nov. 17, 2009).

### 1.   Strength of plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation.

Defendant uniformly classified  Class Members as exempt and ineligible for overtime compensation until August 27, 2006.   Effective August 27, 2006, Defendant reclassified some of its employees working as sales representatives:  1) sales representatives working in Maine, New Jersey, New Mexico, Washington, California, Alaska, Hawaii and Puerto Rico, and 2) all new sales representatives hired after August 27, 2006 regardless of the state in which they worked. Defendant reclassified the remaining exempt sales representatives in June, 2008 when it converted all sales representatives to an hourly plus commission pay structure.

---

[8] This factor does not apply to this case.

1   Plaintiffs, however, would have faced many obstacles if they had continued

2   to litigate the case.  Defendant asserted two exemptions—motor carrier and outside

3   sales exemptions—both of which were the subject of cross-summary judgment

4   motions filed by the parties.  Should the Court have ruled in favor of Defendant on

5   the motor carrier exemption, a significant portion of Plaintiffs' claims would have

6   been eliminated.  And, if the Court denied Plaintiffs' motion for summary judgment

7   regarding the applicability of the outside sales exemption, the case may have gone

8   to trial and could have resulted in Plaintiffs receiving no relief.  The proposed

9   Settlement Agreement removes the risks of Anderson succeeding on these summary

10  judgment motions and the time and expense of additional litigation.  Moreover,

11  Plaintiffs incurred some risk that the Court would have granted Defendant's motion

12  for decertification.  If Defendant had ultimately prevailed, Plaintiffs would have

13  incurred significant time and expense in prosecuting their claims separately.

14      Indeed, each step of this case has been marked by heavily contentious

15  litigation, and the proposed Settlement Agreement provides Class Members with

16  the benefit of a definite recovery without further delay.  (Morgan Decl. ¶ 4).  Even

17  if Plaintiffs had prevailed on the pending motions, Plaintiffs would have faced the

18  inherent risks of litigation, including the possibility of appeal and proving damages

19  at trial.  Discovery regarding damages as well as a trial would have been costly and

20  would have delayed recovery to Plaintiffs.

21      **2.  The risk of maintaining class action status through trial**

22      Plaintiffs' view is that this case is particularly appropriate for class treatment.

23  However, Defendant opposed Plaintiffs' motion for conditional class certification,

24  Plaintiffs' motion for Rule 23 class certification, and filed a motion to decertify the

25  FLSA collective class.  As to the latter, a settlement was reached before the motion

26  was argued.  If Defendant had been successful in this pursuit, Plaintiffs would have

27  been required to litigate their claims in many district courts around the country.

28  ///

**MEMO IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

### 3.  The amount offered in settlement

The settlement fund will be distributed fairly and evenly among FLSA opt-in Plaintiffs and Rule 23 Class Members who desire to take part in the settlement.  As previously discussed, the Net Settlement Fund to be distributed to Class members will be approximately $2,616,790, after deducting attorneys' fees, costs, anticipated administration costs, contingency fund, and service payments to three Named Plaintiffs.  Based on 100% participation, the average recovery for the 487 Class Members is approximately $5,071.[9]   While Plaintiffs might have obtained a larger recovery after full litigation, it is also possible they might have recovered less or their recovery would have been significantly delayed.  In this situation, compromise as "a yielding of absolutes and an abandoning of highest hopes" is appropriate.  Officers for Justice, 688 F.2d at 625.  Moreover, "the essence of a settlement is compromise.  A just result is often no more than an arbitrary point between competing notions of reasonableness."  In re Corregated Container Antitrust Litig., 659 F.2d 1322, 1325 (5th Cir. 1981).  Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, *taken as a whole*, must be fair, adequate, and reasonable."  Shy v. Navistar International Corp., 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (emphasis in original).

The "per week" allocation is the most equitable method of allocation here because accurate time records do not exist in this case.  Therefore, in order to create a fair allocation among FLSA opt-in Plaintiffs and Rule 23 Class members, allocations will be based on the ratio of the number of weeks each Class member worked as a salary exempt sales representative during the Class Period to the total

---

[9]  Participating Class Members will likely receive more than their preliminary allocation, which is based on 100% participation, and their final allocation of settlement amounts will increase if 100% of the Class Members do not return their Claim Forms within forty-five (45) days from mailing of the Settlement Notice. (Ex. 1 at ¶ 16).

number of weeks all Class Members worked as salary exempt sales representatives during the Class Period.

### 4. Extent of discovery completed and stage of proceedings

The parties have sufficient information to make an informed decision about the settlement, including the completion of a substantial amount of discovery. A total of fourteen depositions have been taken in this case, including 30(b)(6) depositions of Defendant, six Plaintiff depositions, a Defendant's manager deposition and the deposition of each party's expert witness. Moreover, the parties have exchanged documents as well as written discovery. (Morgan Decl. ¶ 5,8)

The parties have also engaged in extensive motion practice, including motions for conditional certification and class certification. (Id.) And, although the case settled before oral arguments, the parties fully briefed cross-motions for summary judgment as well as Defendant's motion for decertification. (Id.) Therefore, the parties had the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case during their arms-length negotiations at the mediation sessions.

Lastly, the parties have not spent too much time litigating the case as to deplete the common fund. The Net Settlement Fund of $2,616,790 provides an excellent recovery for Class Members. Moreover, had the parties not settled, Plaintiffs would have been exposed to the risk of losing summary judgment, decertification or trial.

### 5. The experience and views of counsel

Class Counsel has extensive experience and expertise in prosecuting wage-and-hour collective- and class-action litigation cases on behalf plaintiffs, as established in declarations submitted in conjunction with Plaintiffs' Motion for Class Certification. (Dkts. 71-3, 71-17, 71-18; see also Morgan Decl. ¶ 2) Defendants' counsel is likewise experienced in defending against collective- and class-action wage-and-hour cases. Indeed, counsel for the parties have gained a

comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and have ample evidence on which to base an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, as well as discovery conducted in the case, Plaintiffs' counsel believes that the settlement is fair, reasonable, and adequate.  (Morgan Decl. ¶ 7). Defendant's counsel also agrees that the settlement is fair and in the best interest of the Settlement Class.   (Ex. 1 at ¶ 7.) The judgment of experienced counsel regarding the settlement is entitled to great weight. Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979). Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") And, the recommendation of class counsel should be given a presumption of reasonableness. See, e.g., Boyd, 485 F. Supp. at 622.

### 6.  The views of class members

Two of the three Named Plaintiffs have submitted declarations expressing their approval and satisfaction with the proposed Settlement Agreement.  (Exs. 2 and 3)

### 7.  Release of claims

In exchange for the settlement payment, the Settlement Agreement (Ex. 1 at ¶¶ 25-27) incorporates a full release and discharge of Defendant from any and all claims or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the Carter v. Anderson Merchandisers, LP, Complaint, including but not limited to all claims for failure to pay overtime compensation, claims for related penalties, waiting time penalties, penalties for failure to provide meal and rest periods, penalties for failure to provide accurate wage statements, and claims for unfair competition from January 10, 2004, up to an including October 9, 2009.  The release does not extend

to any claims a Class Member may have to vested benefits pursuant to the terms of any employee benefit plan(s) or under California workers' compensation laws.

**B.     The Court Should Approve the Proposed Notice and Claim Form**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(c)(2)(B). Plaintiff must provide notice to potential opt-in class members that is "timely, accurate, and informative." See Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claims forms must be informative and accurate. Id. at 172; Churchhill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alter those with adverse viewpoints to investigate and to come forward and be heard."). As set forth below, the proposed form and manner of class notice have been agreed upon by all counsel and are adequate. Therefore, the Court should approve the Proposed Notice, Claim Form, Administration Procedure and Claims Procedure.

**1.  Proposed notice and claim forms**

Attached to the Settlement Agreement (Exhibit 1) as Exhibits A and B respectively are the parties' proposed Notice of Pendency of Class Action, Settlement, Hearing Date for Court Approval and Claims Procedure ("Notice") and Claim Form.  The parties request the Court's approval to distribute these two forms.

The proposed Notice provides a fair and accurate description of the settlement.  Consistent with Rule 23(e), the Notice of Pendency of Class Action will inform Class Members of: 1) the nature of the lawsuit; 2) a summary of terms of the settlement agreement, including the Settlement Amount, the method of calculating the Net Settlement Fund, and the method of allocation; 3) the binding effect and class release; 4) how to participate in the settlement; 4) information about the opt-out procedure; 5) information regarding the final settlement hearing and how to object to the settlement;  6) how to obtain additional information regarding

1  the Settlement Agreement or process for filing the Claim Form; 7) attorneys' fees

2  and costs; and 8) the result if the Settlement Agreement is not approved.

3      The proposed Claim Form is also fair and accurate as it indicates each Class

4  Member's estimated share of the settlement based on 100% participation, as well as

5  the method of such calculation.  The Claim Form also explicitly states the release

6  language and gives detailed directions of how to participate in the settlement.

7                    **2. Administration procedure**

8      The parties have agreed and propose that Class Counsel should perform the

9  duties of a Settlement Administrator for the purpose of issuing Claim Forms,

10  independently reviewing the Claims Forms, documentation associated with

11  computation of Class Members' pro rata shares of the Settlement Fund, and

12  verifying any amounts due to qualified claimants as set forth in the Settlement

13  Agreement.  (Ex. 1 at ¶ 13.)[10]  Class Counsel may request from the Court costs

14  associated with administering the settlement, which is anticipated to be

15  approximately $10,000.  (Morgan Decl. ¶ 6; Ex. 1 at ¶ 28.)

16      Class Counsel will compute a preliminary allocation of settlement amounts

17  from the Net Settlement Fund for all Class Members in this Action and in the

18  related action entitled Massoud v. Anderson Merchandisers, LP, as identified in the

19  Settlement Agreement.  (Ex. 1 at ¶ 16.) Each Claim Form will set forth a

20  preliminary allocation of the dollar amount of the Class Member's share of the Net

21  Settlement Fund based on 100% participation.  (Id.)

22      The parties propose that Notice and the Claim Form should be sent by Class

23  Counsel to the Settlement Class, by first class mail, within fourteen (14) calendar

24  days of entry of the Court's Order granting preliminary approval of the settlement

25  and notice.  (Id. at ¶ 14.)

26  ///

27

28  ────────────────────
[10] For a detailed description of the Administration and Claims Procedures, Plaintiffs refer the Court to the Joint Stipulation of Settlement and Release that is being filed concurrent with this motion.

-11-

### 3.  Claims procedure

The parties propose that Class Members should have forty-five (45) days from mailing of the Settlement Notice to accept, object to, or opt out of the settlement as outlined in Sections VI and VII of the Notice of Pendency of Class Action form.  (Id. at ¶ 18.)  During that time period, the parties agree that Class Counsel may contact Class Members as often as appropriate in order to obtain the executed Claim Forms in a timely manner and increase participation in the settlement.  (Id.)

All original Claim Forms will be sent directly to Class Counsel at the address indicated on the Claim Form.  (Id. at ¶ 19.)  Qualified claimants will be only those individuals of the Settlement Class who submit a Claim Form that is signed and postmarked in a timely manner.  (Id. at ¶ 12(d)(7)).  Upon receipt of all Claim Forms and resolution of any challenges of the allocations of settlement amounts, Class Counsel will prepare and provide to Defendant a final allocation of the Net Settlement Fund payments to each of the Class Members.  (Id. at ¶ 21.)

Defendant retains the right to void this Settlement Agreement if greater than five percent (5%) of the FLSA Settlement Class identified in paragraph 3(a) of the Settlement Agreement and the FLSA Class in the related action entitled Massoud v. Anderson Merchandisers, LP, U.S. District Court for the Central District, Eastern Division, Case Number EDCV09-00216, reject the settlement and/or dismissal of the claims.  (Id. at ¶ 12(b).)

Should there remain any residual from the Settlement Fund after all payments are made under this Settlement Agreement, for example, if claimants do not cash their settlement checks within ninety (90) calendar days after mailing or if the Contingency Fund is not exhausted, the parties agree to donate this amount to a legal organization that represents employees in employment litigation.  (Id. at ¶ 24.) To that end, the parties have, subject to the Court's approval, selected Legal Aid of Northwest Texas as a cy pres beneficiary.  (Id.)  Any costs associated with

-12-

administering the residual (<u>e.g.,</u> bank stop pay charges) will be deducted from the residual before donation to the <u>cy pres</u> beneficiary.  (<u>Id</u>.)

## C.  <u>Attorneys' Fees</u>

Class Counsel will seek attorneys' fees in the amount of twenty-five percent (25%) of the total Settlement Fund for $906,250, and reasonable litigation costs which are currently approximately $75,960.77.[11] (Morgan Decl. ¶ 5.)  Twenty-five percent of the common fund is the benchmark in the Ninth Circuit, and no unusual circumstances exist to justify a downward departure.   <u>See</u> <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272-73 (9th Cir. 1989).   Class Counsel bore significant risk in litigating this case and put forth substantial resources in investigating the case, conducting discovery, and engaging in extensive motion practice.  (Morgan Decl. ¶ 5.)

Plaintiffs will provide full briefing regarding fees upon request if the Court prefers to review the issue at the present time.   Otherwise, Class Counsel will submit its complete application for attorneys' fees and costs in conjunction with Plaintiffs' motion for final approval of the settlement agreement.

## D.   <u>Service Payments to Named Plaintiffs</u>

It is well settled that named plaintiffs may receive reasonable service payments as part of a class action settlement.  <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 977 (9th Cir. 2003).  These payments not only recognize the plaintiffs' time, effort, and risks taken, but also advance public policy by encouraging other individuals to come forward and protect the rights of class members.

The decision to award service payments is within the Court's discretion.  <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  When considering a motion for approval of service payments, the Court should consider the following factors:

---

[11] Defendant will not oppose Class Counsel's application for attorneys' fees and costs.  (Ex. 1 at ¶ 12(d)(2)).

> the actions the plaintiff has taken to protect the interests of the class,
> the degree to which the class has benefitted from those actions, ... the
> amount of time and effort the plaintiff expended in pursuing the
> litigation ... and reasonabl[e] fear[s of] workplace retaliation.

Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998); see also Van Vranken, 901 F. Supp. at 299).

The service payment sought in this motion and agreed to by the parties are an appropriate and reasonable award for the efforts of the Named Plaintiffs.  Plaintiffs Carter and Lanasa actively contributed to the case by meeting with Class Counsel, participating in their depositions, responding to individualized discovery, and providing documents and information critical to the case.  (Carter Decl ¶ 2, Lanasa Decl. ¶ 2, Morgan Decl. ¶ 8.) Plaintiff Clouse's participation in the case also benefited the case as a whole and involved meeting with Class Counsel and responding to individualized discovery. (Morgan Decl. ¶ 8.)   Moreover, although no longer currently employed by Defendant, the Named Plaintiffs have nonetheless taken on the risk of retaliation with respect to future employment.

Finally, the service payments here—$2500 to Plaintiffs Carter and Lanasa, and $1,000 to Clouse—are reasonable and appropriate given their modest size and the success of the litigation.  The service payments will not significantly reduce the amount of settlement funds available to the Class Members.  See Alberto v. GMRI, Inc., 2008 WL 4891201, *12 (E.D. Cal. Nov. 12, 2008).   Therefore, the Court should grant the modest service payments of $2,500 to Named Plaintiffs Carter and Lanasa, and $1,000 to Named Plaintiff Clouse.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Joint Settlement Agreement by signing the proposed order enclosed herein.

1     Dated: December 3, 2009       NICHOLS KASTER, PLLP

2

3                                  By:     /s/Matthew H. Morgan
                                        Matthew H. Morgan

4                                  ATTORNEYS FOR PLAINTIFFS AND THE PUTATIVE CLASS

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-