1

2

3                                                              O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  KEVIN CARTER, JUSTINE          )
    CLOUSE, and DEBORAH            )   Case No. EDCV 08-00025-VAP
12  LANASA,  individually,         )   (OPx)
    and on behalf of all           )
13  others similarly               )
    situated, and on behalf        )
    of the general public,         )
14                                 )
                  Plaintiffs,      )
15                                 )
                                   )
16        v.                       )
                                   )
17  ANDERSON MERCHANDISERS,        )
    LP, and DOES 1 through         )
18  10, inclusive,                 )
                                   )
19                Defendants.      )
    _____)

20                                 )
    TERRI MASSOUD,                 )
21  JACQUELINE OUGEL, and          )   Case No. EDCV 09-0216-VAP
    JOYCE SPEARS,                  )   (OPx)
22  individually, and on           )
    behalf of others              )
23  similarly situated,            )
                                   )   **PLAINTIFFS' MOTIONS FOR**
                                   )   **PRELIMINARY APPROVAL OF**
24                Plaintiffs,      )   **JOINT STIPULATION AND**
                                   )   **SETTLEMENT AND RELEASE**
25        v.                       )
                                   )
26  ANDERSON MERCHANDISERS,        )   **[Motions filed on December**
    LP,                            )   **10, 2009]**
27                                 )
                  Defendant.       )
28  _____)

Plaintiffs in these related wage and hour class actions are current and former full-time, salaried sales representatives (or "representatives") who worked for Defendant Anderson Merchandisers, LP ("Anderson"), in connection with Anderson's supply of various media products to Wal-Mart retail stores nationwide.  After a successful mediation, the parties in both cases have reached a joint settlement, and seek approval at this time.

## I. BACKGROUND

**A.    The _Carter_ Action**

On January 10, 2008, Plaintiffs Kevin Carter, Justin Clouse, Deborah Lanasa, and Michael Styles[1] filed suit in this Court, on behalf of themselves and others similarly situated, against Anderson and ten unnamed Does.  The Complaint alleged violations of California, Oregon, and federal law for failure to pay overtime wages and provide appropriate meal and rest breaks to employees.

On July 10, 2008, the Court conditionally certified a collective action under the Fair Labor Standards Act ("FLSA") on behalf of a class defined as:

> All persons who Defendant employs or has employed as a Sales Representative, who

---

[1] Plaintiff Michael Styles was voluntarily dismissed as a plaintiff in this action on April 28, 2009.  (_Carter_ Dkt. No. 91.)

Defendant misclassified as exempt since June 1, 2005, and who were therefore denied compensation required by federal wage and hour laws.

This class is the "FLSA class."  313 members of the FLSA class have opted in to this action.

On November 18, 2008, the Court certified a class for Plaintiffs' overtime claim brought under Cal. Labor Code § 510 and Industrial Wage Order No. 4 pursuant to Federal Rule of Civil Procedure 23(a).  That class is defined as:

All current and former California sales representatives who Defendant classified as exempt between January 10, 2004 and August 27, 2006.

This class is referred to as the "California class."[2]  At the same time, the Court denied Plaintiffs' motion to certify a class for their rest break claim under Cal. Labor Code § 226.7.  There are one hundred seventy-four members of the California class.

The parties engaged in mediation and, on October 12, 2009, filed a stipulation to stay the case pending the approval of the joint settlement in this case and Massoud.  On December 10, 2009, the Carter Plaintiffs filed this motion, seeking preliminary approval of the settlement and release.  Defendant filed a notice of non-opposition on December 17, 2009.

_____

    [2] Also on November 18, 2008, the Court denied Plaintiffs' motion to certify a class for their rest break claim under Cal. Labor Code § 226.7.

**B.   The __Massoud__ Action**

On November 26, 2008, Plaintiffs Terri Massoud,[3] Jacqueline Ougel, and Joyce Spears filed a complaint in the United States District Court for the Northern District of Texas, on behalf of themselves and others similarly situated, against Anderson.  The putative collective action only included claims under the FLSA, 29 U.S.C. § 207(a)(1), for a failure to pay overtime. (__Massoud__ Compl. ¶ 13.)  Plaintiffs alleged a number of sales representatives had missed the deadline to join the __Carter__ action, and those representatives were the plaintiffs in the second case.  (__Massoud__ Compl. ¶¶ 10-11.)

Defendant moved to transfer the __Massoud__ action to this Court, and the motion was granted on January 28, 2009.  The parties engaged in mediation, and on October 12, 2009, the parties filed a stipulation to stay the case pending the approval of the joint settlement in this case and __Carter__.  On December 10, 2009, Plaintiff filed this motion, seeking preliminary approval of the settlement and release.  Unlike the __Carter__ action, the Court has not conditionally certified a class in __Massoud__. Therefore, the __Massoud__ Plaintiffs ask that the Court approve the settlement class, in addition to

_____

[3]   In the caption, Massoud's first name is spelled "Terri."  In her declarations, she spells her first name "Teri."

4

1    preliminarily approving the settlement.  Defendant filed
2    a notice of non-opposition on December 17, 2009.

3

4                    **II. LEGAL STANDARDS**
5    **A.   Class Certification**
6        Where "the parties reach a settlement agreement prior
7    to class certification, courts must peruse the proposed
8    compromise to ratify both the propriety of the
9    certification and the fairness of the settlement." <u>Staton</u>
10   <u>v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003).  The
11   proposed <u>Carter</u> settlement class is comprised of two
12   subclasses:  one collective class under the FLSA the
13   Court has already conditionally certified and one Rule 23
14   class the Court has already certified.  The proposed
15   <u>Massoud</u> settlement class is a collective class under the
16   FLSA, with regards to which the Court has not made any
17   certification rulings.  At this stage of the proceedings,
18   different standards apply to the certification of each of
19   these three groups.

20

21       **1.   The FLSA Classes**
22       "To maintain an opt-in class under [FLSA] § 216(b),
23   plaintiffs must demonstrate that they are 'similarly
24   situated.'"  <u>Hipp</u>, 252 F.3d at 1217; 29 U.S.C. § 216(b).
25   Though "similarly situated" is not defined in § 216(b)
26   and the Ninth Circuit has not formulated a test for
27   determining when the standard has been met, many courts
28

in this district have used the two-tiered approach
adopted by the Fifth, Tenth, and Eleventh Circuits.  <u>See</u>
<u>Pfohl v. Farmers Ins. Group</u>, No. CV03-3080 DT (RCx), 2004
WL 554834, *2-3 (C.D. Cal. Mar. 1, 2004); <u>Wynn v. Nat'l</u>
<u>Broadcasting Co., Inc.</u>, 234 F. Supp. 2d 1067, 1081-82
(C.D. Cal. 2002) (both citing <u>Mooney v. Aramco Services</u>
<u>Co.</u>, 54 F.3d 1207, 1212 (5th Cir. 1995); <u>Thiessen v.</u>
<u>General Electric Capital Corp.</u>, 267 F.3d 1095, 1102 (10th
Cir. 2001); and <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252
F.3d 1208, 1216 (11th Cir. 2001)).  Other Ninth Circuit
district courts have also followed this approach.  <u>See,</u>
<u>e.g.</u>, <u>Rodriguez v. SGLC, Inc.</u>, No. 2:08-cv-01971-MCE,
2009 WL 454613, at *1 (E.D. Cal. Feb. 5, 2009); <u>Norman v.</u>
<u>Dell, Inc.</u>, Civil No. 07-6028-TC, 2008 WL 2899722, at *1
(D. Or. July 10, 2008); <u>Adams v. Inter-Con Sec. Sys.</u>, 242
F.R.D. 530, 536 (N.D. Cal. 2007) ("<u>Adams I</u>").

    Under the two-tiered approach, a court first
determines, "on an <u>ad hoc</u> case-by-case basis, whether
plaintiffs are 'similarly situated.'"  <u>Thiessen</u>, 267 F.3d
at 1102 (citing <u>Mooney</u>, 54 F.3d at 1213).  This is
typically referred to as the "notice stage" because the
court "makes a decision — usually based only on the
pleadings and any affidavits which have been submitted —
whether notice of the action should be given to potential
class members."  <u>Mooney</u>, 54 F.3d at 1213-14.

Because the court only has minimal evidence at this stage, the determination of whether opt-in plaintiffs will be similarly situated "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." Mooney, 54 F.3d at 1214.  Courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Thiessen, 267 F.3d at 1102-3 (internal quotations omitted).  It was based on such a showing that the Court conditionally certified the Carter FLSA class in 2008.

The second stage of the two-tiered approach usually is precipitated by a motion for decertification by the defendant and occurs "after discovery is largely complete and the matter is ready for trial." Mooney, 54 F.3d at 1214.  At this stage, the court has much more evidence on which to base its decision, and makes a factual determination on whether the opt-in plaintiffs are similarly situated. Id.  The court may weigh several factors, including: "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear[] to be individual to each plaintiff, and (3) fairness and procedural considerations." Pfohl, 2004 WL 554834 at *2 (citing Thiessen, 267 F.3d at 1103).

Where the parties reach a settlement after a court has conditionally certified a collective class, the court still "must make some final class certification finding before approving a collective action settlement." <u>Burton v. Utility Design, Inc.</u>, No. 6:07-cv-1045-Orl-22KRS, 2008 WL 2856983, at *2 (M.D. Fla. July 22, 2008), <u>citing</u> <u>Anderson v. Cagle's Inc.</u>, 488 F.3d 945, 953 (11th Cir. 2007). <u>See also</u> <u>Misra v. Decision One Mortg. Co.</u>, 2009 WL 4581276, No. SACV 07-0994 DOC, at *4 (C.D. Cal. Apr. 13, 2009); <u>Hopson v. Hanesbrands Inc.</u>, No. CV 08-0844, 2008 WL 3385452, at *1-*2 (N.D. Cal. Aug. 8, 2008).

### 2.   Rule 23 Class

"A district court has a duty to assure that a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." <u>Petrovic v. Amoco Oil Co.</u>, 200 F.3d 1140, 1145 (8th Cir. 1999).  Thus, when reviewing a proposed settlement, a district court must reconsider its certification of class "for instance, if a subsequent development creates a conflict of interest that prevents the representative party from fairly and adequately protecting the interests of all of the class members." <u>Id.</u>  Since a certification under Rule 23(a) is not conditional, however, the Court is not required to revisit certification absent any evidence suggesting reconsideration is necessary.

1

2

3   **B.   Preliminary Approval of Settlement**

4        Rule 23(e) states: "The court must approve

5   settlement, voluntary dismissal or compromise of the any

6   claims, issues, or defenses of a certified class."  Fed.

7   R. Civ. P. 23(e)(1)(A).  The court must hold a hearing

8   and find that "the settlement . . . is fair, reasonable,

9   and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  Review of a

10  proposed settlement generally proceeds in two stages, a

11  hearing on preliminary approval followed by a final

12  fairness hearing.  See Federal Judicial Center, Manual

13  for Complex Litigation, § 21.632 (4th ed. 2004).

14

15       At the preliminary approval stage, a court determines

16  whether a proposed settlement is "within the range of

17  possible approval" and whether or not notice should be

18  sent to class members.  In re Corrugated Container

19  Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); see

20  also Manual for Complex Litigation § 21.632.

21

22       In determining whether a settlement is fair,

23  reasonable, and adequate, a court is to balance several

24  factors, including:

25          the strength of plaintiffs' case; the risk,
            expense, complexity, and likely duration of
26          further litigation; the risk of maintaining class
            action status throughout the trial; the amount
27          offered in settlement; the extent of discovery
            completed, and the stage of the proceedings; the

28

1  experience and views of counsel; the presence of
2  a governmental participant;[4] and the reaction of
   the class members to the proposed settlement.

3
4  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291

5  (9th Cir. 1992), citing Officers for Justice v. Civil

6  Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982); see also

7  In re Heritage Bond Litigation, 546 F.3d 667, 674 (9th

8  Cir. 2008).  The court is also to ensure that the

9  settlement notice "contains adequate information,

10  presented in a neutral manner, to apprise class members

11  of the essential terms and conditions of the settlement."

12  Rodriquez v. West Publishing Corp., 563 F.3d 948, 962

13  (9th Cir. 2009).

14
                    **III. DISCUSSION**
15
   **A.   Class Certification**
16
        **1. The <u>Carter</u> Classes**
17
        The <u>Carter</u> Joint Stipulation of Settlement and
18
   Release incorporates the class definitions approved by
19
   the Court in its July 10, 2008 Order (Dkt. No. 57) and
20
   its November 18, 2008 Order (Dkt. No. 79), and defines
21
   the Settlement Class as those Plaintiffs who have opted
22
   in to the conditionally-certified FLSA and certified Rule
23
   23 California classes.  (<u>Carter</u> Stip. ¶ 3.)
24

25

26

27
        [4] This factor does not apply to this case.  Thus, the
28  Court does not address it.

As noted above, the Court's certification of the Rule 23 California class was a final certification, and thus the Court need not revisit the certification of *that* class, absent any evidence suggesting a change in the Rule 23 factors.  The Court must still grant final certification of the FLSA class, though.  There is no evidence before the Court which suggests that the factors present at the time of the Court's conditional certification have changed, and thus the Court will not deny preliminary approval of the Settlement for this reason.  <u>See, e.g.</u>, <u>Adams v. Inter-Con Security Systems, Inc.</u>, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ("<u>Adams II</u>").  In seeking final approval of the <u>Carter</u> Settlement, Plaintiffs must produce additional evidence to justify final certification of the FLSA class.

**2.   The <u>Massoud</u> Class**

The <u>Massoud</u> class is derivative of the <u>Carter</u> FLSA class.  The parties propose the <u>Massoud</u> class be defined as:

> Plaintiffs/Claimants who have worked for Defendant as salaried, exempt sales representatives [] between November 26, 2005, and October 9, 2009, [] and who have filed consent to join forms in the [<u>Massoud</u>] action.

(<u>Massoud</u> Stip. ¶ 3.)  The consent-to-join forms were only sent to persons who were eligible to opt in to the <u>Carter</u> FLSA class.  (<u>Massoud</u> Morgan Decl. ¶ 8.) The Class

excludes any plaintiffs who have successfully opted in to the <u>Carter</u> FLSA class, however.[5]  (<u>Massoud</u> Mem. at 2.) There are 29 members of this class.  (<u>Massoud</u> Morgan Decl. ¶ 3.)  Two members of the class have submitted declarations as to their job responsibilities, the tasks they performed, hours worked, and compensation.  (Massoud Decl.; Ougel Decl.)

The only distinctions between the <u>Massoud</u> class and the <u>Carter</u> FLSA Class are (1) the class period; (2) the number of Plaintiffs; and (3) the named Plaintiffs. Having reviewed the declarations of the <u>Massoud</u> Plaintiffs, as well as the materials submitted in connection with the <u>Carter</u> motion for preliminary certification, the Court concludes the <u>Massoud</u> Plaintiffs are sufficiently "similarly situated" to be preliminarily approved as a settlement class under FLSA § 216(b). Plaintiffs must properly move for conditional and final certification of this class, though, before the Court will grant final approval of the Settlement.

**B.   Fairness and Adequacy of the Proposed Settlement**

Although there is a separate proposed settlement agreement for each of the <u>Carter</u> and <u>Massoud</u> actions, the

---

[5] For this reason, Plaintiffs request that Plaintiffs Demadura and Sanchez be dismissed with prejudice from the <u>Massoud</u> action, as they are plaintiffs in the <u>Carter</u> action.  (<u>Massoud</u> Mem. at 2.)  This request is addressed in a separate minute order.

1   settlements involve a single award, to be administered
2   jointly to the opt-in plaintiffs in both of those cases.
3   Thus, all of the opt-in plaintiffs from the two <u>Carter</u>
4   and one <u>Massoud</u> classes collectively comprise the
5   relevant Settlement Class. Here, the proposed settlement
6   calls for a total payment of $3.625 million in exchange
7   for a release of all claims, from which the parties
8   propose to deduct the following: (1) attorneys' fees, not
9   to exceed 25% of the total Settlement Fund ($906,250);
10  (2) litigation costs, which currently total $75,960.77
11  for both actions; (3) settlement administration costs of
12  $10,000[6]; (4) "recognition" or "service" payments to the
13  three named Plaintiffs in <u>Carter</u> in the amounts of
14  $2,500, $2,500, and $1,000; (5) and a $10,000
15  "contingency fund" to be administered by Class Counsel
16  for use in addressing late or disputed claims or other
17  unanticipated costs. (<u>Carter</u> Joint Stipulation of
18  Settlement and Release ("<u>Carter</u> Stip.") ¶¶ 9-10, 12(d);
19  <u>Massoud</u> Joint Stipulation of Settlement and Release
20  ("<u>Massoud</u> Stip.") ¶¶ 9-10, 12(d).) By the Court's own
21  calculation, after these deductions, the estimated
22  remaining settlement amount ("Net Settlement Amount")
23  will be approximately $2.617 million.
24
25
26  _____
27  [6] To the extent costs of administering the settlement
    are less than $10,000, the remainder will be donated to a
28  <u>cy pres</u> beneficiary, Legal Aid of Northwest Texas.
    (<u>Carter</u> Stip. ¶¶ 9, 24; <u>Massoud</u> Stip. ¶¶ 9, 24.)

The Settlement Agreement proposes to divide the Net
Settlement Amount among all members of the Settlement
Class who submit valid and timely claim forms based on a
ratio of the number of weeks each Class Member worked as
a salary exempt sales representative during the Class
Period to the total number of weeks all Class Members
worked as salaried exempt sales representatives during
the Class Period. (<u>Carter</u> Stip. ¶ 12(d); <u>Massoud</u> Stip. ¶
12(d).)

### 1.  Arms-Length Negotiations

The parties engaged in negotiations, including two
full-day formal mediation sessions presided over by an
experienced mediator, Michael J. Loeb, after which the
parties reached an agreement.  (<u>Carter</u> Mem. at 3; <u>Massoud</u>
Mem. at 2; <u>Carter</u> Morgan Decl. ¶¶ 4,5; <u>Massoud</u> Morgan
Decl. ¶¶ 4,5.)  "The assistance of an experienced
mediator in the settlement process confirms that the
settlement is non-collusive." <u>Satchell v. Federal</u>
<u>Express Corp.</u>, Nos. C03-2659 SI, C 03-2878 SI, 2007 WL
1114010, at *4 (N.D. Cal. Apr. 13, 2007).  <u>See also</u>
<u>Alexander Mfg., Inc. v. Illinois Union Ins. Co.</u>, — F.
Supp. 2d —, No. CV. 06-735-PK, 2009 WL 3335883, at *13
(D. Or. Oct. 15, 2009).  The Court is thus satisfied the
Settlement Agreement is the product of arms-length
negotiation.

1

    **2.   Strength of Plaintiff's Case and the Risk,
Expense, Complexity, and Likely Duration of
Further Litigation**

2

3      Plaintiffs state the primary strength of the case is

4  the uniform classification of the Class Members as exempt

5  and ineligible for overtime compensation until August 27,

6  2006, and Defendant's subsequent reclassification of the

7  Class Members as nonexempt.  (<u>Carter</u> Mem. at 5; <u>Massoud</u>

8  Mem. at 5.)

9

10     Plaintiffs acknowledge two main obstacles to success

11  in their case.  The first is posed by Defendant's

12  assertion that Plaintiffs were exempted from the coverage

13  of the FLSA under the statute's "motor carrier" and

14  "outside sales" exceptions.  (<u>Carter</u> Mem. at 6; <u>Massoud</u>

15  Mem. at 5-6.)  Defendant moved for summary judgment in

16  <u>Carter</u> on these grounds, but the Court did not hear the

17  motion because of the parties' requested stay due to the

18  efforts to achieve a settlement.  Had the Court ruled in

19  Defendant's favor as to the applicability of either of

20  these exemptions, however, Plaintiffs' entitlement to

21  relief would have been greatly reduced, or eliminated in

22  its entirety.  (<u>Id.</u>)

23

24     Plaintiffs also note that Defendants moved to

25  decertify the FLSA collective class in <u>Carter</u> based on

26  purported variances in the job duties of individual sales

27  representatives.  (<u>Carter</u> Mem. at 6; <u>Massoud</u> Mem. at 6.)

28

1 Hearing on this motion also was stayed due to pending
2 settlement efforts. If the motion for decertification
3 had been granted, though, Plaintiffs would have borne the
4 significant time and financial expense of prosecuting
5 their claims individually in district courts throughout
6 the country. (<u>Id.</u>)

8     Plaintiffs contend that "each step of this case has
9 been marked by heavily contentious litigation." (<u>Carter</u>
10 Mem. at 6; <u>Massoud</u> Mem. at 6.) They argue that the
11 potential appeals and the difficulties of proving damages
12 for overtime violations would increase the cost, risk,
13 and delay associated with trial. (<u>Id.</u>) Settling the
14 case, Plaintiffs contend, "provides Class Members with
15 the benefit of a definite recovery without further
16 delay." (<u>Id.</u>)

18     In light of the foregoing, the Court finds this
19 factor weighs in favor of preliminary approval.

21     **3.   The Amount Offered in Settlement**
22     The amount offered in settlement is $3.625 million,
23 allocated to Class Members in proportion to the number of
24 weeks worked during the class period. (<u>Carter</u> Stip. ¶¶
25 9, 12d; <u>Massoud</u> Stip. ¶¶ 9, 12d.) In exchange for the
26 settlement, all of the opt-in Plaintiffs in both actions
27 agree to release all of their claims against Defendant.
28

(<u>Carter</u> Stip. ¶¶ 12(a), 25; <u>Massoud</u> Stip. ¶¶ 12(a), 25.)
Considering the present value of the settlement amount,
the probability of lengthy litigation in the absence of a
settlement, the risk that Plaintiffs and the Class
Members would not have been able to succeed at trial, and
the risk that a jury could award damages less than $3.625
million, the settlement amount is within the range of
reasonableness.  Accordingly, the Court finds this factor
weighs in favor of preliminary approval.

> ### 4.    The Extent of Discovery Completed, and the Stage
> of the Proceedings

This factor requires the Court to evaluate whether
"the parties have sufficient information to make an
informed decision about settlement." <u>Linney v. Cellular
Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998).
Here, Plaintiffs demonstrate that class counsel conducted
the following discovery: (1) depositions of several
members of Defendant's managerial employees, including a
deposition pursuant to Fed. R. Civ. Pro. 30(b)(6); (2)
depositions of each party's expert witnesses; (3)
depositions of six Plaintiffs; (4) and extensive document
and written discovery.  (<u>Carter</u> Morgan Decl. ¶ 5; <u>Massoud</u>
Morgan Decl. ¶ 5.)  The Court thus finds that the parties
possessed sufficient information to make an informed
decision about the settlement.

17

Although the <u>Carter</u> case has progressed significantly over the past two years since it was filed, and it is scheduled to go to trial on January 19, 2010, numerous disputed issues remain.  There has been no motion practice in <u>Massoud</u>.  The parties in <u>Massoud</u> and <u>Carter</u> engaged in good-faith settlement negotiations throughout the summer and fall of 2009.  Accordingly, the Court is satisfied that the parties have spent sufficient time on the action to allow an informed decision about settlement.  In light of the estimated $2.617 million to be distributed from the Net Settlement Fund, the Court does not have any concern that the parties have spent *too much* time litigating the case as to deplete the common fund.  Accordingly, this factor supports preliminarily approving the settlement.

## 5.  Experience and Views of Counsel

Plaintiffs submit declarations by their counsel demonstrating his firm's experience litigating wage and hour class actions.  (<u>Carter</u> Morgan Decl. ¶ 2; <u>Massoud</u> Morgan Decl. ¶ 2.)  In the declarations, Plaintiffs' counsel states his opinion that the Settlement is reasonable and fair.  (<u>Carter</u> Morgan Decl. ¶ 14; <u>Massoud</u> Morgan Decl. ¶ 14.)  Counsel's opinion is accorded considerable weight.  <u>See, e.g.</u>, <u>Alberto v. GMRI, Inc.</u>, No. CIV. 07-1895 WBS, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008); <u>Hughes v. Microsoft Corp.</u>, No. C98-1646C,

1  C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26,

2  2001).  This factor thus weighs in favor of the

3  reasonableness of the Settlement Agreement.

4

5     **6.   Reaction of Class Members to the Proposed Settlement**

6

7       Plaintiffs submit declarations of Kevin Carter and

8  Deborah Lanasa, named Plaintiffs in the <u>Carter</u> action,

   and Teri Massoud, a named Plaintiff in the <u>Massoud</u>

9  action.  All three Plaintiffs demonstrate involvement

10 with the litigation thus far and an understanding of the

11 proposed settlement, and state that they are "entirely

12 satisfied" with the proposed settlement.  (Carter Decl.

13 ¶¶ 2-5; Lanasa Decl. ¶¶ 2-5; Second Massoud Decl. ¶¶ 2-

14 5.)  This factor thus weighs in favor of approval of the

15 proposed settlement.

16

17    **7.   Attorneys' Fees and Incentive Payment for Named Plaintiffs**

18

19      The Motions and Joint Stipulations indicate that the

20 Plaintiffs will seek allocation of settlement funds for

21 attorneys' fees and for incentive payments.  For a

22 settlement to be fair and adequate, "a district court

23 must carefully assess the reasonableness of a fee amount

24 spelled out in a class action settlement agreement."

25 <u>Staton</u>, 327 F.3d at 963.

26

27

28

### a)   Attorneys' Fees

While Plaintiffs do not seek an award of attorneys' fees at this time, they indicate they will seek attorneys' fees equal to 25% of the gross settlement amount.  (<u>Carter</u> Mem. at 4, n.3; <u>Carter</u> Stip. ¶¶ 10 12(d); <u>Massoud</u> Mem. at 3, n.2; <u>Massoud</u> Stip. ¶¶ 10, 12(d).)

Plaintiffs' claims in this case arise under both federal and California law.  Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method[7] or the percentage-of-the-fund method.[8]  <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 253 (2001); <u>Fischel v. Equitable Life Assurance Soc'y of U.S.</u>, 307 F.3d 997, 1006 (9th Cir. 2002), citing <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).  "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'"  <u>Alberto</u>, 252

---

[7] Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hour rate and then enhancing that figure, if necessary to account for the risks associated with representation.  <u>Paul, John, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989).

[8] Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund.  <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).

F.R.D. at 667, citing <u>In re Wash. Pub. Power Supply Sys.</u> <u>Sec. Litig.</u>, 19 F.3d 1291, 1295 (9th Cir. 1990).

Plaintiff seeks to employ the latter procedure, whereby Class Counsel would recover 25% of the $3.625 million settlement fund ($906,250) for attorneys' fees. (<u>Carter</u> Stip. ¶¶ 10, 12(d)(2); <u>Massoud</u> Stip. ¶¶ 10, 12(d)(2).) Such an award corresponds to the benchmark award for attorneys' fees in the Ninth Circuit. <u>See</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998). While the 25% benchmark can be adjusted upward or downward "to account for any unusual circumstances," the justification for adjustment must be clear. <u>Paul,</u> <u>Johnson, Alston & Hunt v. Graulty</u>, 866 F.2d 268, 272 (9th Cir. 1989). There do not appear to be any unusual circumstances that justify a departure from the Ninth Circuit benchmark. Thus, the attorneys' fees request set forth in the proposed Settlement Agreements appears reasonable. The Court reserves judgment on the issue until a proper fee application is presented, however.

### b)   Incentive Payment for Named Plaintiffs

The Motion indicates Plaintiffs will seek $6,000 as incentive or "service payments" for the three <u>Carter</u> named Plaintiffs, in addition to any recovery to which they may be entitled under the Settlement Agreement. (<u>Carter</u> Mem. at 13; <u>Carter</u> Stip. at ¶ 12(d)(1); <u>Massoud</u>

Stip. ¶ 12(d)(1).)  The incentive payment distribution, however, does not pass muster yet.  This will not prevent the Court from preliminarily approving the settlement, but Plaintiff must make a further showing for final approval.

The criteria courts may consider in determining whether to make an incentive award include:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).  In analyzing these criteria, the Court must conduct an individualized analysis in order to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." Staton, 327 F.3d at 977; Alberto, 252 F.R.D. at 669 (E.D. Cal. 2008); Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).  Plaintiffs have failed to fully meet this burden here.

Since none of these Plaintiffs remain employed by Defendant, there is no real risk of retaliation, nor any other particular risk associated with taking part in this

suit.   In their declarations, Plaintiffs Carter and
Lanasa briefly state that they were involved with the
case by interacting with counsel, reviewing documents,
and sitting for depositions.  (Carter Decl. ¶ 2; Lanasa
Decl. ¶ 2; <u>Carter</u> Morgan Decl. ¶ 8.)  While the Court
does not minimize the import of this participation, the
brief statement in their declarations, along with Class
Counsel's similarly vague description of their
involvement, is insufficient to justify a $2,500
incentive payment for each.  As to Plaintiff Clouse, the
only evidence of his participation in this matter is
Counsel's statement that his "participation . . .
benefited [sic] the case as a whole and involved meeting
with Class Counsel and responding to individualized
discovery."  (<u>Carter</u> Morgan Decl. ¶ 8.)  This
representation is an insufficient basis for the Court to
conclude an incentive payment is appropriate.

     As the other terms of the proposed settlement appears
reasonable, however, the incentive payments will not
prevent preliminary approval.  Prior to final approval,
however, the parties should present or be prepared to
present additional evidence of substantial efforts taken
by the three named plaintiffs to justify the incentive
payments requested.  <u>See</u> <u>Alberto</u>, 252 F.R.D. at 669.

**8.   Release of Claims**

The <u>Carter</u> Joint Stipulation of Settlement and Release proposes to release Defendant from:

> any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the *Carter v. Anderson Merchandisers, LP*, Complaint, including but not limited to all claims for failure to pay overtime compensation, claims for related penalties, waiting time penalties, penalties for failure to provide meal and rest periods, penalties for failure to provide accurate wage statements, and claims for unfair competition from January 10, 2004, up to an including October 9, 2009.

Class Members also knowingly waive "all rights and benefits afforded by section 1542 of the Civil Code of the State of California," which states that general releases normally do not apply to claims "which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor." (<u>Carter</u> Stip. at ¶ 26.)   The <u>Massoud</u> Joint Stipulation includes similar language, releasing Defendant from claims related to the complaint in that case, and covering the time period from November 26, 2005, through October 9, 2009.   (<u>Massoud</u> Stip. ¶ 25.) Both Joint Stipulations explicitly exclude from the release any claims related to employee benefit plans or California workers' compensation law.

24

1    Since neither release prevents Class Members from
2    pursuing claims unrelated to the settlement, the release
3    is fair and reasonable.

4

5    Based on the balance of the foregoing factors, the
6    Court finds Plaintiffs have met their burden of
7    demonstrating the fairness, reasonableness, and adequacy
8    of the Settlement Agreement.  Plaintiffs must obtain
9    final certification of the FLSA collective classes and
10   provide additional support for the class representative
11   incentive award before final approval.

12

13   **B.   Notice Procedure**

14   Under Rule 23(e), the Court must "direct notice in a
15   reasonable manner to all class members who would be
16   bound" by the proposed settlement.  Fed. R. Civ. P.
17   23(c)(2)(B).  Plaintiffs must provide notice to class
18   members that is "timely, accurate, and informative."
19   Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172
20   (1989).  Likewise, claim forms must be informative and
21   accurate.  Id. at 172; Churchill Village, L.L.C. v.
22   General Electric, 361 F.3d 566, 575 (9th Cir. 2004).  The
23   proposed form and manner of class notice have been agreed
24   upon by all counsel and are adequate.

25

26

27

28

### 1.   Administration Procedure

Under the proposed Settlement, Class Counsel will serve as Settlement Administrator, and be responsible for issuing and reviewing Claim Forms and computing Class Members' shares of the Net Settlement Fund.  (<u>Carter</u> Stip. ¶ 13; <u>Massoud</u> Stip. ¶ 13.)  Class Counsel will be granted "reasonable access" to Defendant's Records in order to perform these duties.  (<u>Id.</u>)

Defendant has provided Class Counsel with files indicating the last known address and telephone number of each Class Member, and an estimate of the number of weeks each Class Member worked as a non-salaried sales representative in the Class Period.  (<u>Carter</u> Stip. ¶ 14(a); <u>Massoud</u> Stip. ¶ 14(a).)  Based on this information, within fourteen calendar days of this Order, Class Counsel will send a Settlement Notice (<u>Carter</u> Stip. Ex. A; <u>Massoud</u> Stip. Ex. A) and Claim Form (<u>Carter</u> Stip. Ex. B; <u>Massoud</u> Stip. Ex. B) to each Class Member via first class U.S. Postal Service mail.  (<u>Carter</u> Stip. ¶ 14; <u>Massoud</u> Stip. ¶ 14.)  The Claim Form will include a preliminary calculation of the Class Member's share of the Net Settlement Fund based on 100% participation.  (<u>Carter</u> Stip. ¶ 16; <u>Massoud</u> Stip. ¶ 16.)  If the information already provided by Defendant to Class Counsel is insufficient to prepare and mail these Notices and Claims, Defendant will provide any supplemental

necessary information within five (5) business days of a
written request by Class Counsel.  (<u>Carter</u> Stip. ¶ 14(a);
<u>Massoud</u> Stip. ¶ 14(a).)

Before mailing the Notices and Claim Forms, Class
Counsel will perform an address updating check, and will
use skip tracing or other appropriate steps to ensure
that the Notice and Claim Form are sent to all Class
Members.  (<u>Carter</u> Stip. ¶ 14(b); <u>Massoud</u> Stip. ¶ 14(b).)
If a notice is returned by the U.S. Postal Service to the
Claims Administrator with a forwarding address for the
recipient, the Claims administrator shall re-mail the
notice to that address.  (<u>Carter</u> Stip. ¶ 14; <u>Massoud</u>
Stip. ¶ 14.)

### 2.  Claims Procedure

Class Members shall have forty-five (45) days after
the Settlement Notices and Claim Forms are mailed to
object or opt-out to the settlement, or to return a
completed claim Form.  (<u>Carter</u> Stip. ¶¶ 17-18; <u>Massoud</u>
Stip. ¶¶ 17-18.)  Completed Claim Forms postmarked more
than forty-five (45) days after mailing will not be
honored, "except that additional time may be provided to
a claimant for good cause and within an amount of time
determined by the Class Counsel not to exceed fifteen
(15) days."  (<u>Carter</u> Stip. ¶ 17; <u>Massoud</u> Stip. ¶ 17).)

In the event a Claim Form is submitted timely but is deficient in one or more aspects, Class Counsel shall return the Claim Form to the claimant with a letter explaining the deficiencies. (<u>Carter</u> Stip. ¶ 20; <u>Massoud</u> Stip. ¶ 20.) For his or her claim to be considered, the claimant must correct the deficiencies and resubmit the Claim Form within fourteen (14) days of the date of the deficiency notice. (<u>Id.</u>)

If Class Members dispute the number of weeks worked used by Class Counsel to calculate the preliminary allocation listed in the claim form, they may challenge that number in writing. (<u>Carter</u> Stip. ¶¶ 12(d)(7), 16, 21; <u>Massoud</u> Stip. ¶¶ 12(d)(7), 16, 21.) Class Counsel will make a final, unappealable determination as to that challenge. (<u>Id.</u>)

Upon receipt of all claim forms and resolution of any disputes, Class Counsel will prepare an electronic file containing the final allocation of the Net Settlement Fund and provide it to Defendant's counsel. (<u>Carter</u> Stip. ¶ 21; <u>Massoud</u> Stip. ¶ 21.) Defendant will mail payments to the class members within ten (10) business days of the later of the receipt of the relevant electronic data from Class Counsel, or the effective date of settlement. (<u>Carter</u> Stip. ¶ 12(d)(5); <u>Massoud</u> Stip. ¶ 12(d)(5).) Each Class Member will be mailed two checks. (<u>Carter</u>

1  Stip. ¶ 12(d)(3); <u>Massoud</u> Stip. ¶ 12(d)(3).)  For the

2  <u>Carter</u> FLSA opt-in and <u>Massoud</u> Plaintiffs, one check will

3  include 50% of their award and be allocated to wages, and

4  the other check will include 50% of the award and be

5  allocated to liquidated damages. (<u>Id.</u>)  For the <u>Carter</u>

6  Rule 23 opt-in Plaintiffs, one check will include 1/3 of

7  their award and be allocated to wages, and the other

8  check will include 1/3 of their award, allocated to

9  prejudgment interest, and 1/3 of their award, allocated

10  to penalties under Cal. Labor Code section 203.  (<u>Carter</u>

11  Stip. ¶ 12(d)(3).) Claimants will have ninety (90)

12  calendar days after mailing by Defendant to cash their

13  settlement checks. (<u>Carter</u> Stip. ¶ 23; <u>Massoud</u> Stip. ¶

14  23).  Separate from its payments to the Class Members,

15  Defendant will pay the employer portion of the relevant

16  statutory payroll taxes, and will provide Class members

17  with the appropriate form W-2 and form 1099.  (<u>Carter</u>

18  Stip. ¶¶ 12(d)(4), (21); <u>Massoud</u> Stip. ¶¶ 12(d)(4), 21.)

19

20      In the event that five percent (5%) or more of the

21  FLSA opt-in plaintiffs timely reject the Settlement,

22  Defendant shall have the right to revoke and terminate

23  the agreement.  (<u>Carter</u> Stip. ¶ 12(b);  <u>Massoud</u> Stip. ¶

24  12(b).)

25

26      Should residual funds remain in the Net Settlement

27  Fund after all payments are made, the funds shall be

28

1  disbursed to Legal Aid of Northwest Texas as a cy pres

2  beneficiary.  (<u>Carter</u> Stip. ¶ 24; <u>Massoud</u> Stip. ¶ 24.)

3

4  **3. Notice of Settlement**

5  The Notices will inform Class Members of: "1) the

6  nature of the lawsuit; 2) a summary of terms of the

7  settlement agreement, including the Settlement Amount,

8  the method of calculating the Net Settlement Fund, and

9  the method of allocation; 3) the binding effect and class

10  release; 4) how to participate in the settlement; 4)

11  information about the opt-out procedure; 5) information

12  regarding the final settlement hearing and how to object

13  to the settlement; 6) how to obtain additional

14  information regarding the Settlement Agreement or process

15  for filing the Claim Form; 7) attorneys' fees and costs;

16  and 8) the result if the Settlement Agreement is not

17  approved."  (<u>Carter</u> Mem. at 10-11; <u>Massoud</u> Mem. at 10.)

18
19  The Court has reviewed the proposed notices (<u>Carter</u>

20  Stip. Ex. A; <u>Massoud</u> Stip. Ex. A) and finds them adequate

   to meet these goals with one exception.  The proposed
21
   notices state:
22

23  The Court has tentatively approved reasonable
    compensation to Class Counsel for their work in
24  this matter (which is 25% of the total
    Settlement Amount).
25
26  (<u>Carter</u> Stip. Ex. A at p. 2; <u>Massoud</u> Stip. Ex. A at p.2.)

27  This is inaccurate.  In their memoranda, Plaintiffs in

28  both actions stated: "Class Counsel *will* seek attorneys'

1  fees in the amount of twenty-five (25%) of the total

2  Settlement Fund . . .  Plaintiffs suggest that the

3  approval of attorneys' fees is best reserved for final

4  approval of the settlement." (<u>Carter</u> Mem. at 4, n.3;

5  <u>Massoud</u> Mem. at 3, n.2 (emphasis added).)  Since

6  Plaintiffs thus have not sought any approval of fees at

7  this time, the Court has not approved any fees -

8  tentatively or otherwise - at this juncture.

9  Accordingly, in the notice that is sent to the Class

10 Members, the above-quoted language should be replaced

11 with:

12
13      Class Counsel will seek to be awarded 25% of the
        total Settlement Amount as reasonable
        compensation for their work in this matter.  The
14      Court has the final authority to decide the
        amount of fees to be awarded.
15

16 With this modification, the proposed notices contain

17 "adequate information, presented in a neutral manner, to

18 apprise class members of the essential terms and

19 conditions of the settlement." <u>Rodriguez v. West</u>

20 <u>Publishing Corp.</u>, 563 F.3d 948, 962 (9th Cir. 2009).

21      **4. Scheduling Order**

22      The Court sets hearing date for final approval

23 hearing and related dates as set forth below.

24

| Event | Agreement | Date |
|-------|-----------|------|
| Deadline to mail Class Notice to Class Members | Within 14 days after Preliminary Approval | January 19, 2010 |

28

31

| Deadline for submission of opt-out requests | Must be postmarked within 45 days after Class Notification | March 5, 2010 |
|---|---|---|
| Deadline for comments or objections | Must be postmarked within 45 days after Class Notification | March 5, 2010 |
| Deadline for submission of claim forms | Must be postmarked within 45 days after Class Notification | March 5, 2010 |
| Deadline to file Motion for Final Approval | | March 22, 2010 |
| Deadline to file reply brief responding to objections | | April 12, 2010 |
| Final Approval Hearing | | April 19, 2010, at 2:00 p.m., in Courtroom #2 |

### IV. CONCLUSION

For the foregoing reasons, the Court:

(1) grants preliminary approval of the parties' Settlement;

(2) directs dissemination of the class notice and claim form to the class as specified above; and

(3) sets hearing date for final approval hearing and related dates as set forth above.


Dated: January 7, 2010

VIRGINIA A. PHILLIPS
United States District Judge

32