NICHOLS KASTER, PLLP
Donald H. Nichols, MN State Bar No. 78918*
nichols@nka.com
Paul J. Lukas, MN State Bar No. 22084X*
lukas@nka.com
Matthew Morgan, MN State Bar No. 304657*
morgan@nka.com
Reena I. Desai, MN State Bar No. 0388311*
rdesai@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Facsimile (612) 215-6870
*admitted *pro hac vice*

ERVIN, COHEN & JESSUP, LLP
Eric W. Cheung, CA State Bar No. 235008
echeung@ecjlaw.com
9401 Wilshire Blvd, Ninth Floor
Beverly Hills, CA  90212
Telephone: (310) 273-6333
Facsimile: (310) 859-2325

Attorneys for individual and representative Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kevin Carter, Justin Clouse, and Deborah Lanasa, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Anderson Merchandisers, LP and DOES 1-10 inclusive,<br><br>Defendants. | Case No. EDCV08-00025 VAP (OPx )<br><br>**MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF JOINT STIPULATION OF SETTLEMENT AND RELEASE**<br><br>Honorable Virginia A. Phillips<br>Complaint Filed: January 10, 2008<br>Hearing Date: April 19, 2010<br>Time: 2:00 p.m. |

## TABLE OF CONTENTS

I.     INTRODUCTION................................................................1

II.    PROCEDURAL HISTORY ..................................................1

III.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF
       THE FLSA CLASS.............................................................3

       A. Plaintiffs Do Not Have Disparate Factual and Employment Settings .............5

       B. Defendant has the Same Defenses Available with Respect to Each
          Individual Plaintiff ........................................................6

       C. Fairness and Procedural Concerns Support Granting Final
          Class Certification ........................................................8

IV.    THE SETTLEMENT AGREEMENT........................................9

       A. The Settlement Fund .....................................................9

       B. Allocation of the Settlement Fund ...................................10

V.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT AND ENTER JUDGMENT IN ACCORDANCE
       WITH THE JOINT STIPULATION OF SETTLEMENT AND
       RELEASE.......................................................................11

       A. Notice to Class Members ...............................................11

       B. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate .....13

          1. Arms-length negotiations............................................13

          2. Strength of plaintiffs' case and the risk, expense, complexity, and
             likely duration of further litigation.............................14

          3. The risk of maintaining class action status through trial ............15

          4. The amount offered in settlement .................................15

          5. Extent of discovery completed, and the stage of the proceedings...............16

          6. Experience and views of counsel...................................17

          7. Reaction of Class members to the proposed settlement .............18

          8. Release of claims ....................................................18

VI.    CONCLUSION ...............................................................19

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

**<u>Adams v. Inter-Con Sec. Sys.</u>**, 242 F.R.D. 530 (N.D. Cal. 2007) ...........................4

**<u>Anderson v. Timber Prod. Inspection, Inc.</u>**,
334 F. Supp. 2d 1258 (D. Or. 2004)............................................................7

**<u>Boyd v. Bechtel Corp.</u>**, 485 F. Supp. 610 (N.D. Cal. 1979) ...................................17

**<u>Carter v. Anderson Merchandisers, LP.</u>**, 2008 WL 2783193
(C.D. Cal. July 10, 2008) (Phillips, J.) ........................................................4

**<u>Class Plaintiffs v. City of Seattle</u>**, 955 F.2d 1268 (9th Cir. 1992)........................13

**<u>In re Corregated Container Antitrust Litig.</u>**,
659 F.2d 1322 (5th Cir. 1981) ....................................................................16

**<u>Ellis v. Naval Air Rework Facility</u>**, 87 F.R.D. 15 (N.D. Cal. 1980) ....................17

**<u>Heagney v. European Am. Bank</u>**, 122 F.R.D. 125 (E.D.N.Y. 1988) ......................5

**<u>Hipp v. Liberty Nat'l Life Ins. Co.</u>**, 252 F.3d 1208 (11th Cir. 2001) ....................4

**<u>Hoffmann-La Roche Inc. v. Sperling</u>**, 493 U.S. 165 (1989) .................................9

**<u>Johnson v. TGF Precision Haircutters, Inc.</u>**,
2005 WL 1994286 (S.D. Tex. Aug. 17, 2005)...........................................5

**<u>Kautsch v. Premier Commc'n</u>**, 2008 WL 294271
(W.D. Mo. Jan. 31, 2008) ..........................................................................9

**<u>Leuthold v. Destination America, Inc.</u>**, 224 F.R.D. 462 (N.D. Cal. 2004)............4

**<u>Linney v. Cellular Alaska P'ship</u>**, 151 F.3d 1234 (9th Cir. 1998) ........................16

**<u>Mooney v. Aramco Svcs. Co.</u>**, 54 F.3d 1207 (5th Cir. 1995)..................................4

**<u>Nerland v. Caribou Coffee Co., Inc.</u>**, 564 F. Supp. 2d 1010
(D. Minn. 2007) ..........................................................................................8

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**Norman v. Dell, Inc.**, 2008 WL 2899722 (D. Or. July 10, 2008)..............................4

**Officers for Justice v. Civil Serv. Comm'n**, 688 F.2d 615 (9th Cir. 1982).........16

**Pfohl v. Farmers Ins. Group**, 2004 WL 554834 (C.D. Cal. Mar. 1, 2004)..............4

**Satchell v. Fed. Express Corp.**,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)......................................................13,14

**Shy v. Navistar Int'l Corp.**, 1993 WL 1318607
(S.D. Ohio May 27, 1993) ............................................................................................16

**Smith v. T-Mobile U.S.A., Inc.**,
2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) ..........................................................5

**Thiessen v. Gen. Elec. Cap. Corp.**, 267 F.3d 1095 (10th Cir. 2001) ......................4

**Valladon v. City of Oakland**,
2009 WL 2591346 (N.D. Cal. Aug. 21, 2009) ..........................................................8

**Wilson v. Airborne, Inc.**,
2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) (Phillips, J.)....................................13

**Wynn v. Nat'l Broadcasting Co., Inc.**,
234 F. Supp. 2d 1067 (C.D. Cal. 2002)......................................................................4

**RULES**

Fed.R.Civ.P. 23(c)(2)(B) ..........................................................................................11,13

**CODES AND REGULATIONS**

29 C.F.R. § 541.500(a) ..................................................................................................7

29 C.F.R. § 782.2(a) ......................................................................................................7

29 U.S.C. § 216(b)..........................................................................................................3

49 U.S.C. § 13102(15)....................................................................................................7

49 U.S.C. § 13501............................................................................................................7

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT

## I.     INTRODUCTION

The Court preliminarily approved the parties' Joint Stipulation of Settlement and Release ("Settlement Agreement') on January 7, 2010.  (Dkt. 124.)    In its Preliminary Approval Order, the Court approved the settlement notices, claim forms, releases, and method for distribution to the class members and opt-ins.  (Id.) Class Counsel sent a settlement notice and claim form to 173 eligible Rule 23 class members on January 19, 2010, as required by the Court's order granting preliminary approval of the Settlement Agreement. (Morgan Decl. ¶ 3.)   Class Counsel used diligent efforts to increase class participation in the settlement, and a total of 129 claim forms were returned.  (Id.)  Class Counsel also mailed settlement notices and offers to 302 eligible FLSA Plaintiffs and of that number, 297 returned their confirmation forms to Class Counsel.[1]  (Id.)  In total, 426 of the 475 eligible class members returned valid claim forms.[2]  (Id.)  No FLSA Plaintiff or Rule 23 class member opted out or objected to the settlement.  (Id.)  Class Counsel now respectfully requests that the Court grant final approval of the parties' settlement of Plaintiffs' claims for overtime compensation under the FLSA and the state laws of California.[3]

## II.    PROCEDURAL HISTORY

On January 10, 2008, Plaintiffs filed a proposed class action Complaint in the United States District Court for the Central District of California, Eastern Division,

---

[1] Two FLSA Plaintiffs submitted untimely claim forms, however, they were allowed to participate in the settlement pursuant to the terms of the Settlement Agreement.  (Morgan Decl. ¶ 5.)    Moreover, Class Counsel sent twenty-five eligible Class members in Massoud a Notice and Claim Form, and each Class member returned a valid Claim Form.  Id.

[2] The number of eligible FLSA and Rule 23 Class members has changed since Plaintiffs moved for preliminary approval of the settlement agreement.  Plaintiffs have subsequently found twelve Class members who are either ineligible or had duplicate entries in Plaintiffs' client database.  (Morgan Decl. ¶ 4.)

[3] Plaintiffs understand that Defendant is not opposing this motion pursuant to the preliminarily approved settlement reached by the parties.

-1-

on behalf of themselves and other similarly situated current and former employees of Defendant, alleging the following claims for relief: (1) failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. section 201, et seq.); (2) failure to pay overtime compensation in violation of California law (California Labor Code section 510, 1194 and 1198, and IWC Wage Order(s)); (3) waiting time penalties (California Labor Code sections 201-203); (4) failure to provide itemized wage statements (California Labor Code section 226); (5) failure to provide and/or authorize meal and rest periods (California Labor Code section 226.7); (6) violation of California Business and Professions Code section 17200 et seq.; (7) failure to pay overtime compensation in violation of Oregon law (ORS sections 653.261, 653.055 and OR ADC 839-020-0030); (8) failure to pay wages upon separation in violation of Oregon law (ORS sections 162.140 and 162.150); and (9) failure to provide appropriate rest breaks in violation of Oregon law (ORS sections 653.261, 653.055 and OR ADC 839-020-0030). (Dkt. 1.)

Defendant is a Texas limited partnership doing business throughout the United States.  (Dkt. 15 at ¶ 10.)  Defendant distributes books, children's books, music and video to Wal-Mart stores.  (Dkt. 49-4 at ¶ 2.)  Plaintiffs are current or former sales representatives employed by Defendant.  (Dkt. 1 at ¶ 1.)

The Court conditionally certified the collective action under the FLSA on July 10, 2008.  (Dkt. 57.)   This class will be referred to herein as the "FLSA class." On November 18, 2008, the Court granted Plaintiffs' motion to certify the California overtime class but denied the motion to certify the rest break class.  (Dkt. 79.)  This class will be referred to herein as the "California class."  There are a total of  302 eligible FLSA "opt-in" Plaintiffs[4], as well as 173 Rule 23 California class members, for a total of 475 Class members.[5]  (Morgan Decl. ¶ 3.)

_____

[4] The related case, Massoud v. Anderson Merchandisers, was filed on November 26, 2008 in the United States District Court for the Northern District of Texas. Following an unopposed motion, the Court transferred venue to the United States District Court for the Central District of California, Eastern Division, where this

The parties also engaged in substantial motion practice by filing cross-motions for summary judgment, and Defendant moved for decertification of the collective class.  (Dkt. Nos. 101, 102, 104.)  Before the Court decided the summary judgment and decertification motions, the parties participated in a mediation session with mediator Michael J. Loeb, Esq. from JAMS in San Francisco, at which time the parties reached a settlement agreement.[6]  (Morgan Decl. ¶ 7.)   In consideration for settlement and release of all claims of the Class members against Defendant, Defendant agreed to pay a total sum of $3.625 million.[7]   A Joint Notice of Settlement was filed with the Court on October 12, 2009.  (Dkt. 113.)

On December 10, 2009, Plaintiffs moved for preliminary approval of the settlement and release.  (Dkt. 121.)  Defendant filed a notice of non-opposition on December 17, 2009, and the Court preliminarily approved the parties' Joint Stipulation of Settlement and Release on January 7, 2010.  (Dkt. 122, 124.)

## III.   THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE FLSA CLASS

In conjunction with Plaintiffs' motion for final approval, Plaintiffs request that the the Court grant final certification of the FLSA class.  The FLSA allows certification of classes "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  The Ninth Circuit has not provided a definition of "similarly situated," however, district courts in the Ninth Circuit have adopted the two-tiered approach used by the Fifth,

---

case is venued.  The Massoud case was initiated because several former or current sales representatives filed late consent forms in this action.  The twenty-five (25) Plaintiffs in Massoud would have otherwise been part of this action if they had filed their consent forms during the notice period.  (Morgan Decl. ¶ 2.)

[5] The FLSA class and Rule 23 California class members will be referred to collectively as the "Class members."

[6] The parties participated in a mediation session with Mr. Loeb on May 13, 2009 as well, however, the case did not settle at that time.  (Morgan Decl. ¶ 7)

[7] The settlement award resolves the claims for Plaintiffs in the Carter and Massoud actions against Defendant.  (Ex. 1 at ¶ 9.)

-3-

Tenth, and Eleventh Circuits.  See Carter v. Anderson Merchandisers, LP., 2008 WL 2783193, at *1 (C.D. Cal. July 10, 2008) (Phillips, J.); Norman v. Dell, Inc., 2008 WL 2899722, at *1 (D. Or. July 10, 2008); Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 536 (N.D. Cal. 2007) ("Adams I"); Pfohl v. Farmers Ins. Group, 2004 WL 554834, at *2-3 (C.D. Cal. Mar. 1, 2004) (citing Mooney v. Aramco Svcs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995)); Wynn v. Nat'l Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1081-82 (C.D. Cal. 2002) (citing Mooney, 54 F.3d at 1212; see also Thiessen v. Gen. Elec. Cap. Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); and Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir. 2001)).

Under the first tier analysis, "the court must first decide, based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action."  Leuthold v. Destination America, Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004).   Here, Plaintiffs have met the first tier showing—the Court conditionally certified the FLSA collective class on July 10, 2008.  (Dkt. 57.)

The second stage analysis is typically triggered by a motion for decertification by the defendant and occurs "after discovery is largely complete and the matter is ready for trial."  Mooney, 54 F.3d at 1212.   The court may weigh several factors, including: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations."  Leuthold., 224 F.R.D. at 467.  Here, final class certification should be granted because the FLSA Plaintiffs do not have disparate factual and employment settings, Defendant has the same defenses available to it with respect to the individual plaintiffs, and fairness and procedural considerations support granting final class certification.

**A.**    **Plaintiffs Do Not Have Disparate Factual and Employment Settings**

To determine whether Plaintiffs have disparate factual and employment settings, courts look at "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice.]" Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). In looking at the factual disparities among Plaintiffs, the Court must consider if it can "coherently manage the class in a manner that will not prejudice any party." Johnson v. TGF Precision Haircutters, Inc., 2005 WL 1994286 at *7 (S.D. Tex. Aug. 17, 2005) (citation omitted.)

Courts generally find second-tier certification inappropriate unless the plaintiffs' claims arise out of a single policy, custom or practice that leads to FLSA violations. See, e.g. Smith v. T-Mobile U.S.A., Inc., 2007 WL 2385131, at *5 (C.D. Cal. Aug. 15, 2007). Here, it is undisputed that Plaintiffs' claims arise out of a single policy to classify all sales representatives as exempt employees. And, there are no material factual disparities between Plaintiffs because they all had the same job title, performed the same job duties, and were subject to the same employment policies. Specifically, the Plaintiff class is defined as:

> All persons who Defendant employs or has employed as a Sales Representative, who Defendant misclassified as exempt since June 1, 2005, and who were therefore denied compensation required by federal wage and hour laws.[8]

Indeed, sales representatives performed the same job duties and were responsible for: (1) booting up the "Intermec" (which is a hand held computer or personal digital assistant), connecting it to the telephone line and downloading

---

[8] Dkt. 57.

information from Defendant's computer systems[9]; (2) sorting through point of purchase ("POP") materials which are delivered to Plaintiffs' homes and packing such materials into their vehicles[10]; (3) sorting and reading materials received from Defendant via mail[11]; (4) delivering POP materials to the Wal-Mart stores[12]; (5) stocking various media products on store shelves according to Plan-O-Grams – descriptions of how vendors want their products displayed[13]; and (6) reordering products that have been depleted.[14]

Further, Plaintiffs' claims that they were misclassified as exempt employees arose from Defendant's company-wide policy to classify its sales representatives as exempt employees.[15]   Because Plaintiffs do not have disparate factual or employment settings, and their claims arose from the same company policy to classify sales representatives as exempt employees, final certification is appropriate.

### B.   Defendant has the Same Defenses Available with Respect to Each Individual Plaintiff

Defendant has asserted two main defenses to Plaintiffs' claims— that Plaintiffs were covered under the motor carrier and outside sales exemptions. Neither exemption, however, requires an individualized inquiry into each Plaintiff's claims.  Rather, Defendant's defenses may be applied to the entire class as a whole.

First, under the Motor Carrier Act ("MCA"), an employee is exempt from the FLSA's overtime requirement if (1) the employees' employer was subject to the Motor Carrier Act (i.e., was a motor private carrier), and (2) the employees engaged in activities directly affecting the safety of operation of motor vehicles in interstate

---

[9] Dkt. 104-14, at 21-23; Dkt. 104-15 at ¶ 8; Dkt. 104-16 at ¶ 8.
[10] Dkt. 104-14, at 21-23; Dkt. 104-15 at ¶ 8; Dkt. 104-16 at ¶ 8.
[11] Dkt. 104-14, at 21-23; Dkt. 104-15 at ¶ 8; Dkt. 104-16 at ¶ 8.
[12] Dkt. 104-14, at 21-23; Dkt. 104-15 at ¶ 8; Dkt. 104-16 at ¶ 8.
[13] Dkt. 104-5 at 147-48; Dkt. 104-15 at ¶ 5; Dkt. 104-16 at ¶ 5.
[14] Dkt. 104-15 at ¶ 6; Dkt. 104-16 at ¶ 6.
[15] Dkt. 46-8 at  9-10.

commerce. 29 C.F.R. § 782.2(a); <u>Anderson v. Timber Prods. Inspection, Inc.</u>, 334 F. Supp. 2d 1258, 1261 (D. Or. 2004). Both of these elements are met if:

> (1) the person transported property by motor vehicle;

> (2) the person was engaged in interstate commerce;

> (3) the person was the owner, lessee, or bailee of the property being transported;

> (4) the property was being transported for sale, lease, rent, or bailment or to further a commercial enterprise; and

> (5) the person had some effect on the vehicle's "safety of operation."

49 U.S.C. §§ 13102(15), 13501.

     The first prong of the analysis is to determine whether Defendant is an employer subject to the MCA.  This analysis applies to all Plaintiffs alike because the inquiry is as to the character of the defendant-employer, not the individual employee.  Next, the MCA requires an analysis of the job duties of Plaintiffs.  As described <u>supra</u>, Plaintiffs have submitted substantial evidence describing the similarities in their job duties.  In particular, the POP material that Defendant would have alleged was "property" within the MCA was sent to nearly all Plaintiffs' homes.  Because all Plaintiffs perform the same job duties, Defendant's Motor Carrier Exemption defense may be applied uniformly.

     Defendant also relied on the "outside salesman" exemption.  Department of Labor regulations define an "outside salesman" as any employee: 1) whose primary duty is a) making sales within the meaning of section 3(k) of the FLSA or b) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and 2) who is customarily and regularly engaged away from the employer's place of business in performing such primary duty.  29 CFR § 541.500(a).  The only duty of Plaintiffs that could be construed as "selling" is reordering product.   Even if the Court could consider the task of reordering Anderson product (which is the only conceivable task where an

1   argument could be made regarding selling) as "selling" under the FLSA, then such

2   finding would apply to all Plaintiffs because they performed similar duties.  While

3   the Court would still need to determine whether reordering was Plaintiffs' "primary

4   duty," such a determination can be made on a class-wide basis because Plaintiffs'

5   duties are substantially similar.  Indeed, the amount of Plaintiffs' workweek spent

6   reordering is mostly between five to ten percent.[16]  The varying percent, therefore,

7   is a distinction without a difference.

8          Finally, the fact that Defendant applied the outside sales exemption across-

9   the-board to every sales representative demonstrates there were no "differences"

10  among them.  Therefore, due to the uniform application of Defendant's defenses,

11  Plaintiffs should be granted final class certification.

12      **C.     Fairness and Procedural Concerns Support Granting Final Class**

13          **Certification**

14          Fairness and procedural concerns should also be considered in determining

15  whether to grant final certification.   Valladon v. City of Oakland, 2009 WL

16  2591346, at *7 (N.D. Cal. Aug. 21, 2009).  Specifically, "the number of plaintiffs in

17  th[e] case and the effectiveness of allowing them to pool their resources for

18  litigation, . . . weigh in favor of collective treatment." Id., at *7.

19          There are over 300 Plaintiffs in the FLSA class.  Without the ability to pool

20  resources, it is highly unlikely that many of the Plaintiffs will be able to afford the

21  costs of pursuing on their own their relatively small claims.  See, e.g., Nerland v.

22  Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1026 (D. Minn. 2007) (stating that

23  the right of the defendant to defend against individualized claims on an individual

24  basis must be balanced against the plaintiffs' rights to have their day in court).

25  Decertifying this class would effectively place each opt-in Plaintiff back to square

26  one without the benefit of pooled resources to resolve the common question of

27  whether Defendant misclassified Plaintiffs.  Nerland, 564 F. Supp. 2d at 1025-26;

28

---

[16] See Dkt. 104-15 at ¶ 6; 104-16 at ¶ 6.

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**

Kautsch v. Premier Commc'n, 2008 WL 294271, at *4 (W.D. Mo. Jan. 31, 2008). Permitting this case to proceed as a collective action would also benefit the judicial system by the efficient resolution in one proceeding of common issues of law and fact.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).  Because Plaintiffs are "similarly situated" and there is a significant number of Plaintiffs, the efficiency in litigating all claims together and allowing all Plaintiffs to pool their resources weigh in favor of certifying the class.

## IV.   THE SETTLEMENT AGREEMENT

### A.   The Settlement Fund

The Joint Settlement Agreement ("Settlement Agreement") creates a common fund of $3.625 million in complete resolution of the instant action and the Massoud case.  According to the terms of the Settlement Agreement, the following payments will be made from the Settlement Fund: (1) costs incurred by Class Counsel which are $75,621.10 for both actions, and an anticipated $10,000 in costs to administer the settlement[17]; (2) attorneys' fees for Class Counsel, Nichols Kaster, PLLP, in the amount of $906,250[18] (twenty-five percent (25%) of the total Settlement Fund); (3) a premium of $2,500 to Named Plaintiffs Carter and Lanasa, individually for their active roles in the case, including their participation in depositions and fact discovery[19]; (4) a contingency fund of Ten Thousand Dollars ($10,000) to be administered by Class Counsel for use in addressing any late or disputed claims by Class members or unanticipated costs of concluding this settlement (the "Contingency Fund")[20]; and (5) settlement amounts for the claims of

---

[17] To the extent costs are less than $10,000, such amount will be donated to the cy pres beneficiary indicated in ¶ 24 of the Settlement Agreement (Legal Aid of Northwest Texas).  (Morgan Decl. ¶ 11.)

[18] Plaintiffs filed a full and complete application for attorneys' fees in conjunction with this motion.

[19] Plaintiffs withdraw their request for service payment to Plaintiff Clouse.

[20] A total of $9,861.88 of the Contingency Fund was used to address the claims of two Class members who returned late claim forms.  (Morgan Decl. ¶ 13.)  Pursuant

-9-

the Plaintiff Class.  (Ex. 1 at ¶ 12(d)(1).)  Considering the deductions described by items (1)–(4), the remaining amount to be distributed under item (5) to Class members will be approximately $2,618,129[21] ("Net Settlement Fund.") (Morgan Decl. ¶ 12).  No amount will revert back to Defendant.

Eligible claimants of the Class members[22] are defined as:

- **_Carter_ FLSA Plaintiff Subclass.**  All FLSA "opt-in" Plaintiffs who have filed a consent to join form in _Carter v. Anderson Merch., L.P.,_ 08-0025-VAP (C.D. CA 2008) as of October 9, 2009, and who were employed by Defendant as salaried, exempt sales representatives between January 10, 2005, and October 9, 2009 ("FLSA Class Period.").

- **_Carter_ Rule 23 Plaintiff Subclass.**  All "Rule 23" California class members in _Carter v. Anderson Merch., L.P.,_ 08-0025-VAP (C.D. CA 2008), who have not filed "opt-out" notices and who were employed by Defendant as salaried, exempt sales representatives in California between January 10, 2004, and August 27, 2006 ("California Class Period.")

(Ex. 1 at ¶ 12(d)(3).)

**B.   Allocation of the Settlement Fund**

Pursuant to the terms of the Settlement Agreement, Defendant will make payments to Plaintiffs from the Net Settlement Fund to each Class member who was employed by Defendant as a salary exempt sales representative at any time

---

to the settlement agreement, the remaining amount of the Contingency Fund will be donated.  (Ex. 1 ¶ 24.)

[21] The Net Settlement Fund will be allocated to Class members in both the _Carter_ and _Massoud_ actions.

[22] The twenty-five (25) eligible FLSA Plaintiffs in the _Massoud_ action are included as "Class members" for the purposes of the settlement.  Plaintiffs have filed a separate motion for final approval of the joint stipulation of settlement and release in the _Massoud_ case.

during the relevant Class Period, and who submits a valid and timely Claim Form, a payment based on the ratio of the number of weeks each Class member worked as a salary exempt sales representative during the Class Period to the total number of weeks all Class Members worked as a salary exempt sales representative during the Class Period.  (Ex. 1 at ¶ 12(d)(1).)

## V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT IN ACCORDANCE WITH THE JOINT STIPULATION OF SETTLEMENT AND RELEASE

The Court should grant final approval of the settlement because Class members received adequate notice and the Settlement Agreement is fair, reasonable, and adequate.

### A.   Notice to Class Members

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure requires that notice procedures must provide "the best notice that is practicable under the circumstances."  In conjunction with preliminary approval of the settlement, the Court reviewed the proposed Notice of Pendency of Class Action, Settlement, Hearing Date for Court Approval and Claims Procedure ("Notice") and Claim Form and found they were adequate.[23]  (Dkt. 124 at 25).  Pursuant to the Order, the Court-approved Notice and Claim Forms were distributed by Class Counsel to the Class members by first-class U.S. mail, postage prepaid, on January 19, 2010. (Morgan Decl. ¶ 3.)

The Notice informed such class members of 1) the nature of the lawsuit; 2) a summary of terms of the settlement agreement, including the Settlement Amount, the method of calculating the Net Settlement Fund, and the method of allocation; 3)

---

[23] The Court approved Class Counsel's proposed Notice of Settlement with one modification regarding attorneys' fees. See Dkt. 124 at 30-31.  Plaintiffs' Counsel made such modification on the Notice before distributing to Class members. See Ex. 1A (final, court-approved Notice sent to Class members).  See also Ex. 1B (final, court-approved Claim Form sent to Class members).

the binding effect and class release; 4) how to participate in the settlement; 5) information about the opt-out procedure; 6) information regarding the final settlement hearing and how to object to the settlement; 7) how to obtain additional information regarding the Settlement Agreement or process for filing the Claim Form; 8) attorneys' fees and costs; and 9) the result if the Settlement Agreement is not approved.   (Ex. 1A).   The Claim Form indicated each Class Member's estimated share of the settlement based on 100% participation, as well as the method of such calculation. (Ex. 1B).  The Claim Form also explicitly stated the release language and gave detailed directions of how to participate in the settlement.   (Id).   The deadline for submitting a claim form, objections to the settlement, or opt-out notices (March 5, 2010), was prominently referenced in the settlement materials.  (Exs. 1A, 1B.)

In accordance with the Settlement Agreement, Class Counsel cross-referenced the addresses with the National Change of Address database to obtain the most current and accurate addresses of Class members before mailing  (Morgan Decl. ¶ 6).   In addition, any notice materials that were returned as undeliverable by the post office were re-sent to individuals using alternate addresses found in an Accurint database search.   (Id).

Class members received forty-five (45) days after the Notices and Claim Forms were mailed to object or opt-out to the settlement, or to return a completed claim form.  (Ex. 1 ¶ 14; Dkt. 124 at 27).   On February 12, 2010, Class Counsel sent a second Notice to Class members who had not returned a Claim Form, and a reminder letter on February 24, 2010 as well. (Morgan Decl. ¶ 6.)   Class Counsel also placed telephone calls to individuals with current phone numbers on file, reminding them to return their claim forms if they intended to participate in the settlement.   (Id.)   A total of 426 Class members in Carter returned signed Claim Forms.  (Morgan Decl. ¶ 3.)  Class Counsel did not receive any objections to the settlement or opt-out notices.  (Id.)

-12-

In conjunction with preliminary approval, the Court found the form and manner of class notice to be adequate.   (Dkt. 124 at 25-31).   Class Counsel complied with the court-approved notice procedures, as outlined above. Accordingly, the Court should find that the notice procedures provided "the best notice that is practicable under the circumstances." Fed. R. Civ. P.23(c)(2)(B).

**B.**     **The Proposed Settlement Agreement is Fair, Reasonable, and Adequate**

In determining whether a settlement is fair, reasonable, and adequate, courts balance several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[24] and the reaction of the class members to the proposed settlement.

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir.1992); Wilson v. Airborne, Inc., 2008 WL 3854963, *6 (C.D. Cal. Aug. 13, 2008) (Phillips, J.).

The Court analyzed the enumerated factors in considering Plaintiffs' Motion for Preliminary Approval and found that each factor weighed in favor of preliminary approval.   (Dkt. 124.)   There have been no material changes which would warrant a shift toward denying final approval of the settlement.   Indeed, each factor supports the finding that the settlement is fair, reasonable and adequate.

### 1.     Arms-length negotiations

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." Satchell v. Fed. Express Corp., 2007

---

[24] There is no governmental participant in the instant action.   Therefore, this element is not addressed.

WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).  The parties participated in two full-day mediation sessions with mediator Michael J. Loeb, Esq. from JAMS in San Francisco.  (Morgan Decl. ¶ 7)  Mr. Loeb is an experienced mediator.  (Id.)  After review of these considerations, this Court was "satisfied the Settlement Agreement is the product of arms-length negotiation."  (Dkt. 124 at 14.)

> **2.      Strength of plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation**

Defendant uniformly classified Class members as exempt and ineligible for overtime compensation until August 27, 2006.  Effective August 27, 2006, Defendant reclassified some of its employees working as sales representatives:  1) sales representatives working in Maine, New Jersey, New Mexico, Washington, California, Alaska, Hawaii and Puerto Rico, and 2) all new sales representatives hired after August 27, 2006 regardless of the state in which they worked.  Defendant reclassified the remaining exempt sales representatives in June, 2008 when it converted all sales representatives to an hourly plus commission pay structure.

Plaintiffs, however, would have faced many obstacles if they had continued to litigate the case.  Defendant asserted two exemptions—motor carrier and outside sales exemptions—both of which were the subject of cross-summary judgment motions filed by the parties.  If the Court had ruled in Defendant's favor on the motor carrier exemption, a significant portion of Plaintiffs' claims would have been eliminated.  And if the Court denied Plaintiffs' motion for summary judgment regarding the applicability of the outside sales exemption, the case may have gone to trial and could have resulted in Plaintiffs receiving no relief.  The proposed Settlement Agreement removes the risks of Anderson prevailing on these summary judgment motions and the time and expense of additional litigation.  Moreover, Plaintiffs incurred some risk that the Court would have granted Defendant's motion

for decertification.   If Defendant had prevailed, Plaintiffs would have incurred significant time and expense in prosecuting their claims separately.

Indeed, each step of this case has been marked by heavily contentious litigation, and the proposed Settlement Agreement provides Class Members with the benefit of a definite recovery without further delay.  (Morgan Decl. ¶ 7).  Even if Plaintiffs had prevailed on the pending motions, Plaintiffs would have faced the inherent risks of litigation, including the possibility of appeal and proving damages at trial.  Discovery regarding damages as well as a trial would have been costly and would have delayed recovery to Plaintiffs.

### 3.   The risk of maintaining class action status through trial

Plaintiffs' view is that this case is particularly appropriate for class treatment. Defendant, however, opposed Plaintiffs' motion for conditional class certification, Plaintiffs' motion for Rule 23 class certification, and filed a motion to decertify the FLSA collective class.  As to the latter, a settlement was reached before the motion was argued.  If Defendant had been successful in this pursuit, Plaintiffs would have been required to litigate their claims in many district courts around the country.

### 4.   The amount offered in settlement

The settlement fund will be distributed fairly and evenly among FLSA opt-in Plaintiffs and Rule 23 Class Members who have returned their claim forms.  As previously discussed, the Net Settlement Fund to be distributed to Class members will be approximately $2,618,129, after deducting attorneys' fees, costs, anticipated administration costs, contingency fund, and service payments to two Named Plaintiffs.   Class members received an excellent recovery, ranging from approximately $71 to $12,681.  (Morgan Decl. ¶ 12).  The average award is approximately $5,818.  Id.

While it is possible that Plaintiffs would have received a larger recovery after full litigation, it is also possible they might have recovered less or their recovery would have been significantly delayed.  In this situation, compromise as "a yielding

of absolutes and an abandoning of highest hopes" is appropriate.  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).  Moreover, "the essence of a settlement is compromise.  A just result is often no more than an arbitrary point between competing notions of reasonableness."  In re Corregated Container Antitrust Litig., 659 F.2d 1322, 1325 (5th Cir. 1981).  Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, *taken as a whole*, must be fair, adequate, and reasonable."  Shy v. Navistar Int'l Corp., 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (emphasis in original).

The "per week" allocation is the most equitable method of allocation here because accurate time records do not exist in this case.  To create a fair allocation among FLSA opt-in Plaintiffs and Rule 23 Class members, allocations were based on the ratio of the number of weeks each Class member worked as a salary exempt sales representative during the Class Period to the total number of weeks all Class Members worked as salary exempt sales representatives during the Class Period.

### 5. Extent of discovery completed, and the stage of the proceedings

In its evaluation of this factor, the Court must consider whether "the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  The parties have sufficient information to make an informed decision about the settlement, due largely to the completion of a substantial amount of discovery.  A total of fourteen depositions have been taken in this case, including 30(b)(6) depositions of Defendant, six Plaintiff depositions, a Defendant's manager deposition and the deposition of each party's expert witness.  (Morgan Decl. ¶ 10).  Moreover, the parties have exchanged documents as well as written discovery.  (Id.)

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT

The parties have also engaged in extensive motion practice, including motions for conditional certification and class certification. (Id.)  And although the case settled before oral arguments, the parties fully briefed cross-motions for summary judgment and Defendant's motion for decertification. (Id.)  The parties, therefore, had the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case during their arms-length negotiations at the mediation sessions.

Lastly, the parties have not spent too much time litigating the case as to deplete the common fund. The Net Settlement Fund of approximately $2,618,129 provides an excellent recovery for Class Members. Moreover, had the parties not settled, Plaintiffs would have been exposed to the risk of losing summary judgment, decertification or trial.

### 6.    Experience and views of counsel

The judgment of experienced counsel regarding the settlement is entitled to great weight. Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979). Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") And the recommendation of class counsel should be given a presumption of reasonableness. See, e.g., Boyd, 485 F. Supp. at 622.

Class Counsel has extensive experience and expertise in prosecuting wage-and-hour collective- and class-action litigation cases on behalf of plaintiffs, as established in declarations submitted in conjunction with Plaintiffs' Motion for Class Certification.  (Dkts. 71-3, 71-17, 71-18; see also Nichols Decl. ¶¶ 4-5, 7-9, filed in conjunction with Plaintiffs' Application for Attorneys' Fees and Costs.) Defendants' counsel is likewise experienced in defending against collective- and class-action wage-and-hour cases. Indeed, counsel for the parties have gained a comprehensive knowledge of the facts and legal issues relating to the respective

1   claims and defenses and have ample evidence on which to base an informed
2   assessment of the proposed settlement.  Based on their knowledge of the case and
3   the applicable law, as well as discovery conducted in the case, Plaintiffs' counsel
4   believes that the settlement is fair, reasonable, and adequate.  (Morgan Decl. ¶ 16).
5   Defendant's counsel also agrees that the settlement is fair and in the best interest of
6   the Settlement Class.  (Ex. 1 at ¶ 7.)

7        The Court found that the experience and views of Counsel weighed in favor
8   of preliminarily approving the settlement.  (Dkt. 124 at 18-19).  Plaintiffs' counsel
9   continues to support the settlement; therefore, this factor should still weigh in favor
10  of granting final settlement.  (Morgan Decl. ¶ 16).

11          **7.      Reaction of Class members to the proposed settlement**

12       As previously mentioned, Class Counsel mailed 475 Class members a Notice
13  and Claim Form, and received 426 valid Claim Forms back.[25]  (Morgan Decl. ¶ 3).
14  No class member opted-out of or objected to the settlement, weighing in favor of
15  final approval of the settlement.   (Morgan Decl. ¶ 3).   Moreover, two Named
16  Plaintiffs submitted declarations expressing their approval and satisfaction with the
17  proposed Settlement Agreement.  (See Dkts. 121-7 and 121-8.)

18          **8.      Release of claims**

19       In exchange for the settlement payment, the Settlement Agreement (Ex. 1 at
20  ¶¶ 25-27) incorporates a full release and discharge of Defendant from any and all
21  claims or causes of action of whatever kind or nature, whether known or unknown,
22  that were alleged or that reasonably arise out of the facts alleged in the Carter v.
23  Anderson Merchandisers, LP, Complaint, including but not limited to all claims for
24  failure to pay overtime compensation, claims for related penalties, waiting time
25  penalties, penalties for failure to provide meal and rest periods, penalties for failure
26  to provide accurate wage statements, and claims for unfair competition from

27  _____

28  [25] In addition, each of the twenty-five Class members in Massoud returned valid
    claim forms.  (Morgan Decl. ¶ 3.)

January 10, 2004, up to and including October 9, 2009.  The release does not extend to any claims a Class Member may have to vested benefits pursuant to the terms of any employee benefit plan(s) or under California workers' compensation laws.

## VI.  CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' Motion for Final Approval of Joint Stipulation of Settlement and Release.

Dated: March 22, 2010                              NICHOLS KASTER, PLLP


By:    /s/Matthew H. Morgan

Matthew H. Morgan
ATTORNEYS FOR PLAINTIFFS AND
THE PUTATIVE CLASS

**MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT**