O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KEVIN CARTER, JUSTINE
CLOUSE, and DEBORAH
LANASA, individually,
and on behalf of all
others similarly
situated, and on behalf
of the general public,

                    Plaintiffs,

        v.

ANDERSON MERCHANDISERS,
LP, and DOES 1 through
10, inclusive,

                    Defendants.
_____

**_Case No. EDCV 08-0025-VAP (OPx)_**

**ORDER GRANTING PLAINTIFFS'
MOTION FOR FINAL SETTLEMENT
APPROVAL AND DISMISSING
ACTION**

TERRI MASSOUD,
JACQUELINE OUGEL, and
JOYCE SPEARS,
individually, and on
behalf of others
similarly situated,

                    Plaintiffs,

        v.

ANDERSON MERCHANDISERS,
LP,

                    Defendant.
_____

Case No. EDCV 09-0216-VAP
(OPx)

**ORDER GRANTING PLAINTIFFS'
MOTIONS (1)TO CERTIFY
CONDITIONAL AND FINAL CLASS;
and (2) FOR FINAL SETTLEMENT
APPROVAL AND DISMISSING
ACTION**

**[Motions filed on March 22,
2010]**

The <u>Carter</u> Plaintiffs' Motion for Final Settlement Approval, and the <u>Massoud</u> Plaintiffs' Motions to Certify a Conditional and Final Settlement Class and for Final Settlement Approval came before the Court for a final fairness hearing on April 19, 2010.  After reviewing and considering all papers filed in support of the Motions, as well as the arguments advanced by counsel at the hearing, the Court GRANTS all three motions, as set forth below.

Plaintiffs in these related wage and hour class actions are current and former full-time, salaried sales representatives (or "representatives") who worked for Defendant Anderson Merchandisers, LP ("Anderson"), in connection with Anderson's supply of various media products to Wal-Mart retail stores nationwide.  On January 7, 2010, the Court granted the motions of Plaintiffs in both cases and preliminarily approved the parties' joint stipulations of settlement and release.  On March 22, Plaintiffs in both cases filed motions for final approval of the joint stipulations of settlement and release, as well as applications for attorney's fees and costs, which are addressed in a separate order.  In addition, consistent with the Court's January 7, 2010 Order, the <u>Massoud</u> Plaintiffs filed a motion to certify a conditional and final settlement class.  On March 25, 2010, Defendant filed notices of non-opposition to each of the pending motions

1   and applications.   No potential class member has either

2   opted-out or objected to the terms of settlement.

3

## I.  BACKGROUND

5   **A.    The _Carter_ Action**

6   On January 10, 2008, Plaintiffs Kevin Carter, Justin

7   Clouse, Deborah Lanasa, and Michael Styles[1] filed suit in

8   this Court, on behalf of themselves and others similarly

9   situated, against Anderson and ten unnamed Does.   The

10  Complaint alleged violations of California, Oregon, and

11  federal law for failure to pay overtime wages and provide

12  appropriate meal and rest breaks to employees.

13

14  On July 10, 2008, the Court conditionally certified a

15  collective action under the Fair Labor Standards Act

16  ("FLSA") on behalf of a class defined as:

17      All persons who Defendant employs or has employed
        as a Sales Representative, who Defendant
18      misclassified as exempt since June 1, 2005, and
        who were therefore denied compensation required by
19      federal wage and hour laws.

20  This class is the "FLSA class."   There were 302 eligible

21  members of the FLSA class who opted-in to this action.

22  (Morgan Decl. in Support of _Carter_ Mot. for Final Approval

23  of Settlement ("Morgan _Carter_ Approval Decl.") ¶ 2.)

24

25

26

_____

27      [1] Plaintiff Michael Styles was voluntarily dismissed
    as a plaintiff in this action on April 28, 2009.  (_Carter_
28  Dkt. No. 91.)

On November 18, 2008, the Court certified a class for Plaintiffs' overtime claim brought under Cal. Labor Code § 510 and Industrial Wage Order No. 4 pursuant to Federal Rule of Civil Procedure 23(a).  That class is defined as:

> All current and former California sales representatives who Defendant classified as exempt between January 10, 2004 and August 27, 2006.

This class is referred to as the "California class."[2]  There are one hundred seventy-three members of the California class.  (Morgan <u>Carter</u> Approval Decl. ¶ 3.)

The parties engaged in mediation and, on October 12, 2009, filed a stipulation to stay the case pending the approval of the joint settlement in this case and <u>Massoud</u>.

**B.  The <u>Massoud</u> Action**

On November 26, 2008, Plaintiffs Terri Massoud,[3] Jacqueline Ougel, and Joyce Spears filed a complaint in the United States District Court for the Northern District of Texas, on behalf of themselves and others similarly situated, against Anderson.  The putative collective action only included claims under the FLSA, 29 U.S.C. § 207(a)(1), for a failure to pay overtime.  (<u>Massoud</u> Compl. ¶ 13.)

---

[2] Also on November 18, 2008, the Court denied Plaintiffs' motion to certify a class for their rest break claim under Cal. Labor Code § 226.7.

[3] In the caption, Massoud's first name is spelled "Terri."  In her declarations, she spells her first name "Teri."

Plaintiffs alleged a number of sales representatives had missed the deadline to join the <u>Carter</u> action, and those representatives were the plaintiffs in the second case. (<u>Massoud</u> Compl. ¶¶ 10-11.)

Defendant moved to transfer the <u>Massoud</u> action to this Court, and the motion was granted on January 28, 2009.  The parties engaged in mediation, and on October 12, 2009, the parties filed a stipulation to stay the case pending the approval of the joint settlement in this case and <u>Carter</u>.

**C.   The January 7, 2010 Order**

In its January 7, 2010 Order, the Court granted preliminary approval of the parties' settlement, and directed dissemination of the class notice and claim form. In so doing, the Court noted that, prior to final approval of the <u>Carter</u> Settlement, Plaintiffs would be required to "produce additional evidence to justify final certification of the FLSA class." (Jan. 7, 2010 Order at 11.)

The Court also granted preliminary approval of the <u>Massoud</u> class, defined as Plaintiffs/Claimants who have worked for Defendant as salaried, exempt sales representatives between November 26, 2005, and October 9, 2009; who have filed consent to join forms in the <u>Massoud</u> action; and who did not successfully opt in to the <u>Carter</u> FLSA class. (<u>Id.</u> at 11-12.)  There are twenty-five members

of this class.   (Morgan Decl. in Supp. of Mot. for Class
Cert. in Massoud ("Morgan Massoud Class Cert. Decl.") Decl.
¶ 2; Morgan Carter Approval Decl. ¶ 2.)   Prior to final
approval of the Massoud Settlement, though, the Court noted
Plaintiffs  would  be  required  to  "properly  move  for
conditional  and  final  certification  of  the  [Massoud]
class."  (Jan. 7, 2010 Order at 12.)   This statement was a
clerical  error,  as  the  Court's  "preliminary"  approval
served  as  the  required  conditional  certification.    Thus,
only the final certification of both FLSA classes remains.

## II. LEGAL STANDARDS

Where "the parties reach a settlement agreement prior
to  class  certification,  courts  must  peruse  the  proposed
compromise  to  ratify  both  the  propriety  of  the
certification and the fairness of the settlement." Staton
v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

## A.   Class Certification

The  Carter  settlement  class  is  comprised  of  two
subclasses:  one collective class under the FLSA and one
Rule  23  class.    The  Massoud  settlement  class  is  a
collective class under the FLSA.

### 1.   The FLSA Classes

"To maintain an opt-in class under [FLSA] § 216(b),
plaintiffs  must  demonstrate  that  they  are  'similarly

situated.'"   Hipp, 252 F.3d at 1217; 29 U.S.C. § 216(b).
Though "similarly situated" is not defined in § 216(b) and
the Ninth Circuit has not formulated a test for determining
when the standard has been met, many courts in this
district have used the two-tiered approach adopted by the
Fifth, Tenth, and Eleventh Circuits.   See Pfohl v. Farmers
Ins. Group, No. CV03-3080 DT (RCx), 2004 WL 554834, *2-3
(C.D. Cal. Mar. 1, 2004); Wynn v. Nat'l Broadcasting Co.,
Inc., 234 F. Supp. 2d 1067, 1081-82 (C.D. Cal. 2002) (both
citing Mooney v. Aramco Services Co., 54 F.3d 1207, 1212
(5th Cir. 1995)); Thiessen v. General Electric Capital
Corp., 267 F.3d 1095, 1102 (10th Cir. 2001); and Hipp v.
Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (11th Cir.
2001)).   Other Ninth Circuit district courts have also
followed this approach.   See, e.g., Rodriguez v. SGLC,
Inc., No. 2:08-cv-01971-MCE, 2009 WL 454613, at *1 (E.D.
Cal. Feb. 5, 2009); Norman v. Dell, Inc., Civil No.
07-6028-TC, 2008 WL 2899722, at *1 (D. Or. July 10, 2008);
Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 536 (N.D.
Cal. 2007) ("Adams I").

     Under the two-tiered approach, a court first
determines, "on an ad hoc case-by-case basis, whether
plaintiffs are 'similarly situated.'"   Thiessen, 267 F.3d
at 1102 (citing Mooney, 54 F.3d at 1213).   This is
typically referred to as the "notice stage" because the
court "makes a decision — usually based only on the

pleadings and any affidavits which have been submitted —
whether notice of the action should be given to potential
class members." <u>Mooney</u>, 54 F.3d at 1213-14.

Because the court only has minimal evidence at this
stage, the determination of whether opt-in plaintiffs will
be similarly situated "is made using a fairly lenient
standard, and typically results in 'conditional
certification' of a representative class." <u>Mooney</u>, 54 F.3d
at 1214. Courts require "nothing more than substantial
allegations that the putative class members were together
the victims of a single decision, policy, or plan."
<u>Thiessen</u>, 267 F.3d at 1102-3 (internal quotations omitted).
It was based on such a showing that the Court conditionally
certified the <u>Carter</u> FLSA class in 2008 and the <u>Massoud</u>
class in its January 7, 2010 Order.

The second stage of the two-tiered approach usually is
precipitated by a motion for decertification by the
defendant and occurs "after discovery is largely complete
and the matter is ready for trial." <u>Mooney</u>, 54 F.3d at
1214. At this stage, the court has much more evidence on
which to base its decision, and makes a factual
determination on whether the opt-in plaintiffs are
similarly situated. <u>Id.</u> The court may weigh several
factors, including: "(1) the disparate factual and
employment settings of the individual plaintiffs, (2) the

various defenses available to the defendant which appear[]
to be individual to each plaintiff, and (3) fairness and
procedural considerations." Pfohl, 2004 WL 554834 at *2
(citing Thiessen, 267 F.3d at 1103).

Where the parties reach a settlement after a court has
conditionally certified a collective class, the court still
"must make some final class certification finding before
approving a collective action settlement." Burton v.
Utility Design, Inc., No. 6:07-cv-1045-Orl-22KRS, 2008 WL
2856983, at *2 (M.D. Fla. July 22, 2008), citing Anderson
v. Cagle's Inc., 488 F.3d 945, 953 (11th Cir. 2007). See
also Misra v. Decision One Mortg. Co., 2009 WL 4581276, No.
SACV 07-0994 DOC, at *4 (C.D. Cal. Apr. 13, 2009); Hopson
v. Hanesbrands Inc., No. CV 08-0844, 2008 WL 3385452, at
*1-*2 (N.D. Cal. Aug. 8, 2008).

## 2.  Rule 23 Class

"A district court has a duty to assure that a class
once certified continues to be certifiable under Fed. R.
Civ. P. 23(a)." Petrovic v. Amoco Oil Co., 200 F.3d 1140,
1145 (8th Cir. 1999). Thus, when reviewing a proposed
settlement, a district court must reconsider its
certification of class "for instance, if a subsequent
development creates a conflict of interest that prevents
the representative party from fairly and adequately
protecting the interests of all of the class members." Id.
Since a certification under Rule 23(a) is not conditional,

9

however, the Court is not required to revisit certification absent any evidence suggesting reconsideration is necessary.

**B.   Fairness of the Settlement**

Before approving a settlement, the court must hold a hearing and find that "the settlement . . . is fair, reasonable, and adequate."   Fed. R. Civ. P. 23(e)(1)(C). Review of a proposed settlement generally proceeds in two stages: a hearing on preliminary approval, followed by a final fairness hearing.   <u>See</u> Federal Judicial Center, <u>Manual for Complex Litigation</u>, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether or not notice should be sent to class members.   <u>In re Corrugated Container Antitrust Litig.</u>, 643 F.2d 195, 205 (5th Cir. 1981); <u>see also</u> <u>Manual for Complex Litigation</u> § 21.632.   At the final approval stage, the Court takes a closer look at the proposed settlement, taking into consideration objections and any other further developments in order to make a final fairness determination.

In determining whether a settlement is fair, reasonable, and adequate, a court is to balance several factors, including:

the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992), citing Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982); see also In re Heritage Bond Litigation, 546 F.3d 667, 674 (9th Cir. 2008).  This is "by no means an exhaustive list of relevant considerations," though, and "[t]he relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." Officers for Justice, 688 F.2d at 625.

In evaluating a proposed settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  The Court "does not have the ability to delete, modify, or substitute certain provisions," and "[t]he settlement must stand or fall in its entirety." Id. The question is not whether the settlement "could be prettier, smarter, or snazzier," but solely "whether it is fair, adequate, and free from collusion." Id., 150 F.3d at 1027.

# III. DISCUSSION

**A.  Class Certification**

    **1.  The <u>Carter</u> Classes**

The <u>Carter</u> Joint Stipulation of Settlement and Release incorporates the class definitions approved by the Court in its July 10, 2008 Order (Dkt. No. 57) and its November 18, 2008 Order (Dkt. No. 79), and defines the Settlement Class as those Plaintiffs who have opted in to the conditionally-certified FLSA and certified Rule 23 California classes. (Morgan <u>Carter</u> Approval Decl. ¶ 17, Ex. 1 ("<u>Carter</u> Stip.").)

The Court's certification of the Rule 23 California class was a final certification, and thus the Court need not revisit the certification of that class, absent any evidence suggesting a change in the Rule 23 factors.  The Court must still grant final certification of the FLSA class, though.  As noted above, there are many factors the Court may consider in conducting this inquiry, including "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear[] to be individual to each plaintiff, and (3) fairness and procedural considerations." <u>Pfohl</u>, 2004 WL 554834 at *2 (citing <u>Thiessen</u>, 267 F.3d at 1103).

The Court has reviewed the evidence submitted by Plaintiffs, and concludes that the FLSA class members' claims arise from similar factual settings: all had the same position as sales representatives, and all were classified as exempt from the FLSA.  While there may have been minor differences in the tasks actually performed by each class member, this will not preclude certification. "Where . . . there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities." Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 160 (S.D.N.Y. 2008), quoted in Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 946 (9th Cir. 2009).

Defendants have also asserted uniform defenses which apply to all class members, namely the Motor Carrier Act, 49 U.S.C. §§ 13102, 13501, and "outside sales" exemptions to the FLSA.  Finally, "fairness and procedural considerations, including the number of plaintiffs in this case and the effectiveness of allowing them to pool their resources for litigation, also weigh in favor of collective treatment." Valladon v. City of Oakland, No. C 06-07478 SI, 2009 WL 2591346, at *7 (N.D. Cal. Aug. 21, 2009).  The

Court thus concludes final certification of the <u>Carter</u> FLSA class is appropriate.

### 2. The <u>Massoud</u> Class

The <u>Massoud</u> class is derivative of the <u>Carter</u> FLSA class, and consists of twenty-five sales representatives who filed late consent forms in the <u>Carter</u> action. (Morgan Decl. in Supp. of <u>Massoud</u> Mot. for Final Approval of Settlement ("Morgan <u>Massoud</u> Approval Decl.") ¶¶ 2-3, 17, Ex. 1 ("<u>Massoud</u> Stip.").  The only distinctions between the <u>Massoud</u> class and the <u>Carter</u> FLSA Class are (1) the class period; (2) the number of Plaintiffs; and (3) the named Plaintiffs.

The Court has reviewed the evidence submitted by Plaintiffs, including declarations and deposition testimony of several class members and concludes that, as with the <u>Carter</u> FLSA class, the FLSA class members' claims arise from similar factual settings, and uniform defenses are implicated.  Although the class is significantly smaller, fairness and procedural considerations still weigh in favor of collective treatment.  The Court thus concludes final certification of the <u>Massoud</u> class is appropriate.

## B. Fairness and Adequacy of the Proposed Settlement

Although there is a separate proposed settlement agreement for each of the <u>Carter</u> and <u>Massoud</u> actions, the

settlements involve a single award, to be administered jointly and uniformly to the class members who filed valid claims in both of those cases.  Thus, all of the plaintiffs from the two Carter and one Massoud classes collectively comprise the relevant Settlement Class.  Here, the proposed settlement calls for a total payment of $3.625 million in exchange for a release of all claims, from which the parties propose to deduct the following: (1) attorneys' fees, not to exceed 25% of the total Settlement Fund ($906,250); (2) litigation costs, which currently total $75,621.10 for both actions; (3) settlement administration costs of $10,000[4]; (4) "recognition" or "service" payments to two of the named Plaintiffs in Carter, if approved by the Court, in the amounts of $2,500 each; (5) and a $10,000 "contingency fund" to be administered by Class Counsel for use in addressing late or disputed claims or other unanticipated costs.[5]  (Carter Stip. ¶¶ 9-10, 12(d); Massoud Stip. ¶¶ 9-10, 12(d); Morgan Carter Approval Decl. ¶ 9; Morgan Massoud Approval Decl. ¶ 9; Pls.' Carter Approval Mem. at 9.)  By the Court's own calculation, after these deductions, the estimated remaining settlement amount ("Net Settlement Amount") will be approximately $2.617 million.

---

[4] To the extent costs of administering the settlement are less than $10,000, the remainder will be donated to a cy pres beneficiary, Legal Aid of Northwest Texas. (Carter Stip. ¶¶ 9, 24; Massoud Stip. ¶¶ 9, 24.)

[5] $9,861.88 of this fund was used to address the claims of class members who returned late claim forms. (Morgan Carter Approval Decl. ¶ 13.)

15

The Settlement Agreement proposes to divide the Net Settlement Amount among all members of the Settlement Class who have submitted valid and timely claim forms based on a ratio of the number of weeks each Class Member worked as a salary exempt sales representative during the Class Period to the total number of weeks all Class Members worked as salaried exempt sales representatives during the Class Period. (<u>Carter</u> Stip. ¶ 12(d); <u>Massoud</u> Stip. ¶ 12(d).)

**1.   Arms-Length Negotiations**

The parties engaged in negotiations, including two full-day formal mediation sessions presided over by an experienced mediator, Michael J. Loeb, after which the parties reached an agreement.   (Morgan <u>Carter</u> Approval Decl. ¶ 7; Morgan <u>Massoud</u> Approval Decl. ¶ 7.)   "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." <u>Satchell v. Federal Express Corp.</u>, Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). <u>See also Alexander Mfg., Inc. v. Illinois Union Ins. Co.</u>, — F. Supp. 2d —, No. CV. 06-735-PK, 2009 WL 3335883, at *13 (D. Or. Oct. 15, 2009).   The Court is thus satisfied the Settlement Agreement is the product of arms-length negotiation.

**2.   Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Plaintiffs state the primary strength of the case is the uniform classification of the Class Members as exempt and ineligible for overtime compensation until August 27, 2006, and Defendant's subsequent reclassification of the Class Members as nonexempt. (<u>Carter</u> Approval Mem. at 14; <u>Massoud</u> Approval Mem. at 7.)

Plaintiffs acknowledge two main obstacles to success in their case.  The first is posed by Defendant's assertion that Plaintiffs were exempted from the coverage of the FLSA under the statute's "motor carrier" and "outside sales" exceptions. (<u>Carter</u> Approval Mem. at 14; <u>Massoud</u> Approval Mem. at 7-8.)  Defendant moved for summary judgment in <u>Carter</u> on these grounds, but the Court did not hear the motion because of the parties' requested stay due to the efforts to achieve a settlement.  Had the Court ruled in Defendant's favor as to the applicability of either of these exemptions, however, Plaintiffs' entitlement to relief would have been greatly reduced, or eliminated in its entirety. (<u>Id.</u>)

Plaintiffs also note that Defendants moved to decertify the FLSA collective class in <u>Carter</u> based on purported variances in the job duties of individual sales representatives. (<u>Carter</u> Approval Mem. at 14-15; <u>Massoud</u>

1   Approval Mem. at 8.)   Hearing on this motion also was
2   stayed due to pending settlement efforts.   If the motion
3   for decertification had been granted, though, Plaintiffs
4   would have borne the significant time and financial expense
5   of prosecuting their claims individually in district courts
6   throughout the country.   (Id.)

7

8       Plaintiffs also contend that "each step of this case
9   has been marked by heavily contentious litigation."
10  (Carter Approval Mem. at 15; Massoud Approval Mem. at 8.)
11  They argue that the potential appeals and the difficulties
12  of proving damages for overtime violations would increase
13  the cost, risk, and delay associated with trial.   (Id.)
14  Settling the case, Plaintiffs contend, "provides Class
15  Members with the benefit of a definite recovery without
16  further delay."   (Id.)

17

18      In light of the foregoing, the Court finds this factor
19  weighs in favor of final approval.

20

21      **3.   The Amount Offered in Settlement**
22      The amount offered in settlement is $3.625 million,
23  allocated to Class Members in proportion to the number of
24  weeks worked during the class period.   (Carter Stip. ¶¶ 9,
25  12d; Massoud Stip. ¶¶ 9, 12d.)   Class counsel indicates
26  this will yield an average recovery of approximately $5,818
27  for each class member, with actual recoveries ranging from
28

1  $71 to $12,681.  (Morgan <u>Carter</u> Approval Decl. ¶ 12.)  This

2  is a substantial, cash award for all class members.

3

4      In exchange for the settlement, all of the opt-in

5  Plaintiffs in both actions agree to release all of their

6  claims against Defendant.  (<u>Carter</u> Stip. ¶¶ 12(a), 25;

7  <u>Massoud</u> Stip. ¶¶ 12(a), 25.)  Considering the present value

8  of the settlement amount, the probability of lengthy

9  litigation in the absence of a settlement, the risk that

10 Plaintiffs and the Class Members would not have been able

11 to succeed at trial, and the risk that a jury could award

12 damages less than $3.625 million, the settlement amount is

13 within the range of reasonableness.  Accordingly, the Court

14 finds this factor weighs in favor of approval.

15

16     **4.  The Extent of Discovery Completed, and the**
       **Stage of the Proceedings**

17 This factor requires the Court to evaluate whether "the

18 parties have sufficient information to make an informed

19 decision about settlement."  <u>Linney v. Cellular Alaska</u>

20 <u>P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998).  Here,

21 Plaintiffs demonstrate that class counsel conducted the

22 following discovery: (1) depositions of several members of

23 Defendant's managerial employees, including a deposition

24 pursuant to Fed. R. Civ. Pro. 30(b)(6); (2) depositions of

25 each party's expert witnesses; (3) depositions of six

26 Plaintiffs; and (4) extensive document and written

27 discovery.  (Morgan <u>Carter</u> Approval Decl. ¶ 10; Morgan

28

<u>Massoud</u> Approval Decl. ¶ 10.)   The Court thus finds that the parties possessed sufficient information to make an informed decision about the settlement.

Although the <u>Carter</u> case has progressed significantly over the past two years since it was filed, and was scheduled to go to trial in January 2010, numerous disputed issues remain.   There has been no motion practice in <u>Massoud</u>.   The parties in <u>Massoud</u> and <u>Carter</u> engaged in good-faith settlement negotiations throughout the summer and fall of 2009.   Accordingly, the Court is satisfied that the parties have spent sufficient time on the action to allow an informed decision about settlement.   In light of the estimated $2.617 million to be distributed from the Net Settlement Fund, the Court does not have any concern that the parties have spent *too much* time litigating the case as to deplete the common fund.   Accordingly, this factor supports preliminarily approving the settlement.

### 5.   Experience and Views of Counsel

Plaintiffs' counsel do not address their experience in connection with the motions for final approval, but the Court has noted their experience in wage and hour class actions in its previous orders.   In their declarations, Plaintiffs' counsel states his opinion that the Settlement is reasonable and fair.   (Morgan <u>Carter</u> Approval Decl. ¶ 16; Morgan <u>Massoud</u> Approval Decl. ¶ 16.)   Counsel's opinion

is accorded considerable weight.  See, e.g., Alberto v. GMRI, Inc., No. CIV. 07-1895 WBS, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008); Hughes v. Microsoft Corp., No. C98-1646C, C93-0178C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001).  This factor thus weighs in favor of the reasonableness of the Settlement Agreement.

   **6.  Reaction of Class Members to the Proposed Settlement**

   Of the 173 eligible Carter Rule 23 class members, 129 returned valid claim forms.  (Morgan Carter Approval Decl. ¶ 3.)  Of the 302 Carter FLSA opt-in class members, 297 returned valid claim forms.  (Id.)  Of the twenty-five members of the Massoud opt-in class, all twenty-five returned valid claim forms.  (Morgan Massoud Approval Decl. ¶ 3.)  As noted above, no class members objected to or opted-out of either settlement.  The lack of objections or opt-outs, combined with a high claim rate, weighs strongly in favor of settlement approval.  See, e.g., Barcia v. Contain-a-Way, Inc., No. 07cv938-IEG,2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

   In addition, in connection with their motions for preliminary approval, Plaintiffs submitted declarations from Kevin Carter and Deborah Lanasa, named Plaintiffs in the Carter action, and Teri Massoud, a named Plaintiff in the Massoud action.  All three Plaintiffs demonstrated involvement with the litigation thus far and an

understanding of the proposed settlement, and stated that they are "entirely satisfied" with the proposed settlement. (See Carter Dkt. No. 121-7 (Carter Decl.) ¶¶ 2-5; Carter Dkt. No. 121-8 (Lanasa Decl.) ¶¶ 2-5; Massoud Dkt. No. 60-9 (Second Massoud Decl.) ¶¶ 2-5.)  This factor thus weighs in favor of approval of the proposed settlement.

### 7.   Attorneys' Fees and Recognition Payment for Named Plaintiffs

Plaintiffs have filed separate applications for attorneys' fees and costs in both cases, and, in Carter, for the approval of a service payment to two named plaintiffs, which are ruled upon in a separate order.  The payments requested are relevant to the Court's fairness and adequacy inquiry, though.  For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  Staton, 327 F.3d at 963.

### a)   Attorneys' Fees

In their request for attorneys' fees and costs, Plaintiffs' counsel seek attorneys' fees equal to 25% of the gross settlement amount, explicitly contemplated by the Settlement Agreement.  (Carter Stip. ¶¶ 10 12(d); Massoud Approval Mem. at 3, n.2; Massoud Stip. ¶¶ 10, 12(d).)

Plaintiffs' claims in this case arise under both federal and California law.  Under both California and

Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method[6] or the percentage-of-the-fund method.[7] Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 253 (2001); Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002), citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee awards out of common funds be 'reasonable under the circumstances.'" Alberto, 252 F.R.D. at 667, citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 (9th Cir. 1990).

Plaintiff seeks to employ the latter procedure, whereby Class Counsel would recover 25% of the $3.625 million settlement fund ($906,250) for attorneys' fees. (Carter Stip. ¶¶ 10, 12(d)(2); Massoud Stip. ¶¶ 10, 12(d)(2).) Such an award corresponds to the benchmark award for attorneys' fees in the Ninth Circuit. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). Thus,

---

[6] Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hour rate and then enhancing that figure, if necessary to account for the risks associated with representation. Paul, John, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

[7] Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund. Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

the attorneys' fees set forth in the proposed Settlement Agreements appears reasonable in that it is not indicative of fraud or collusion.   The merits of the fee request itself is addressed in a separate order.

### b)   Recognition Payments for Named Plaintiffs

Plaintiffs seek $5,000 as recognition or "incentive" payments for two of the Carter named Plaintiffs, in addition to any recovery to which they may be entitled under the Settlement Agreement.   (Pls.' Carter Approval Mem. at 9; Pls.' Carter Attorneys' Fees Mem. at 11-12; Carter Stip. at ¶ 12(d)(1); Massoud Stip. ¶ 12(d)(1).) This consists of $2,500 to each of Plaintiffs Carter and Lanasa.[8]

The Court must conduct an individualized analysis of these proposed payments, in order to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." Staton, 327 F.3d at 977; Alberto, 252 F.R.D. at 669 (E.D. Cal. 2008);   Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).   The payments represent a minute portion of the total settlement amount, and recognize the significant role Carter and

---

[8] Previously, Plaintiffs indicated they would seek an recognition payment for a third Carter Plaintiff.   They have now withdrawn this request.   (Pls.' Carter Approval Mem. at 9 n. 19.)

Lanasa played in advancing these actions, and do not suggest that the settlement was collusive or fraudulent by any means.

### 8.  Release of Claims

The <u>Carter</u> Joint Stipulation of Settlement and Release proposes to release Defendant from:

> any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the *Carter v. Anderson Merchandisers, LP*, Complaint, including but not limited to all claims for failure to pay overtime compensation, claims for related penalties, waiting time penalties, penalties for failure to provide meal and rest periods, penalties for failure to provide accurate wage statements, and claims for unfair competition from January 10, 2004, up to an including October 9, 2009.

Class Members also knowingly waive "all rights and benefits afforded by section 1542 of the Civil Code of the State of California," which states that general releases normally do not apply to claims "which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor." (<u>Carter</u> Stip. ¶ 26.) The <u>Massoud</u> Joint Stipulation includes similar language, releasing Defendant from claims related to the complaint in that case, and covering the time period from November 26, 2005, through October 9, 2009. (<u>Massoud</u> Stip. ¶ 25.) Both Joint

Stipulations explicitly exclude from the release any claims related to employee benefit plans or California workers' compensation law.

Since neither release prevents Class Members from pursuing claims unrelated to the settlement, the release is fair and reasonable.

Based on the balance of the foregoing factors, the Court finds Plaintiffs have met their burden of demonstrating the fairness, reasonableness, and adequacy of the Settlement Agreements in both the <u>Carter</u> and <u>Massoud</u> actions.

## IV.   CONCLUSION

For the reasons explained above, the Court GRANTS final certification of the <u>Carter</u> FLSA and <u>Massoud</u> classes, and final approval of the settlement of both actions.   The actions are ordered DISMISSED with prejudice.   The Court shall retain jurisdiction for a period of sixty days to enforce the terms of the settlement.   Plaintiffs' applications for attorneys' fees, costs, and recognition payments are addressed in a separate order.

**IT IS SO ORDERED.**

Dated: <u>May 11, 2010</u>

                              VIRGINIA A. PHILLIPS
                         United States District Judge